GROSSKOPF OIL, INC., a Wisconsin corporation, Plaintiff-Respondent,

v.

Galen D. WINTER, Defendant-Third Party Plaintiff-Appellant,

v.

Steven ASCHENBRENNER, and Wisconsin Lawyers Mutual Insurance Company, Third Party Defendants-Respondents.†

Court of Appeals

*No. 89-1406. Submitted on briefs February 19, 1990.—Decided May 8, 1990.*

(Also reported in 457 N.W.2d 514.)

†Petition to review denied.

For defendant-third party plaintiff-appellant there were briefs by *Richard C. Rowland* of *Bollenbeck, Block, Seymour, Rowland & Samson, S.C.,* Appleton.

For third-party defendants-respondent there was a brief by *Jerome E. Smyth* and *Cynthia M. Caine* of *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Grosskopf Oil, Inc., initiated this legal malpractice action against attorney Galen Winter, who in turn brought a third-party action against attorney Steven Aschenbrenner. The alleged legal malpractice involved a real estate transaction and foreclosure suit resulting in Grosskopf losing its leasehold interest in certain real property it operated as a gas station. Winter had represented Grosskopf at the time it had entered into the lease, and Aschenbrenner had represented Grosskopf in the foreclosure action. On motion for summary judgment, the trial court dismissed Winter's complaint against Aschenbrenner, concluding that Aschenbrenner's representation was not negligent as a matter of law. On appeal, Winter argues that factual issues regarding Aschenbrenner's defense of the foreclosure suit require trial.

Winter argues that the trial court erred when it concluded that sec. 706.11, Stats., establishes priority of a subsequent mortgage over a lease as a matter of law. Winter also argues that the failure to record the lease does not establish the priority of the mortgage as a matter of law. We agree with both contentions. The effect of non-recording requires a factual determination of the mortgagee's good faith. We conclude that the trial court erred when it ruled that Aschenbrenner was absolved of liability as a matter of law. Therefore, the issue of Aschenbrenner's liability remains an issue for further litigation. Accordingly, we reverse and remand for further proceedings.

Carl Danen purchased a gas station from Grosskopf in order to remodel it and build a car wash. Winter represented Grosskopf in connection with the negotiations, which resulted in the sale of the property to Danen and a fifteen-year lease back to Grosskopf. Danen also executed a promissory note to Grosskopf for the balance due on the sale. Under the lease, Grosskopf retained possession as tenant and continued its operation of the service station. The lease was never recorded. The lease contained an ambiguous provision purporting to subordinate itself to mortgages for construction loans, but reserved the right of possession with the tenant.[1] Danen subsequently executed two mortgages on the property, one to De Pere Savings and Loan and one to American Industrial Leasing.[2]

After a series of events, De Pere Savings and Loan commenced foreclosure proceedings.[3] Grosskopf retained

---

[1]The clause in the lease provides:

*The lease shall be subject and subordinate to the lien of any mortgage and/or deed of trust* which the lessor may place upon the premises to finance the cost of construction of the improvements and to all terms, conditions and provisions thereof, to all advances made, and to any renewal, extensions, modifications or replacement thereof. *Provided, however, that if there are no defaults hereunder on the part of the lessee, the right of possession of lessee to the leased premises and lessee's rights arising out of this lease shall not be affected or disturbed by the mortgagee* or trustee or beneficiary under the deed of trust in the exercise of any of its rights under the mortgage, deed of trust or the note secured thereby, *nor shall lessee be named as a party defendant to any foreclosure or other proceeding under the mortgage* or deed of trust, *nor in any other way be deprived of any of its rights under this lease, nor shall this lease be terminated or affected by any foreclosure* or sale or any proceeding under any mortgage or deed of trust. (Emphasis supplied.)

[2]The record does not disclose whether the mortgages were given for construction loans.

[3]A chronology of the events is as follows:

579

Aschenbrenner to represent it in the foreclosure proceeding. After filing an answer asserting Grosskopf's lease was superior to the mortgages, Aschenbrenner took no further steps to defend the action. Summary judgment was entered in favor of De Pere Savings and Loan, based upon a ruling that the mortgage was superior to the unrecorded lease, thereby foreclosing Grosskopf's leasehold interest. Danen's obligation to Grosskopf on the promissory note was discharged in bankruptcy.

Grosskopf then initiated this legal malpractice action against Winter, alleging negligence in failing to adequately draft and record the lease to protect Grosskopf's interests. Winter brought a third-party action against Aschenbrenner, alleging that in the foreclosure action Aschenbrenner failed to adequately protect Grosskopf's lease rights. Winter moved for summary judgment seeking dismissal of the complaint against himself and judgment against Aschenbrenner. Aschenbrenner also moved for summary judgment.

The trial court concluded as a matter of law that Aschenbrenner was not negligent for failing to pursue a defense to the foreclosure action because it was an "obvious losing cause." The court ruled that sec. 706.11, Stats., gave the subsequent mortgage priority over the

May 1983: Grosskopf deeded the property to Danen.

May 1983: Danen leased property to Grosskopf.

August 1983: Danen gives a mortgage to American Industrial Leasing.

October 1983: Danen gives a mortgage to De Pere Savings and Loan.

December 1983: American Industrial subordinates its mortgage to De Pere Savings.

July 1984: Mortgage foreclosure action.

February 1985: Judgment of foreclosure.

unrecorded lease as a matter of law and dismissed the complaint against Aschenbrenner. The trial court denied Winter's motion seeking dismissal of Grosskopf's complaint against him, concluding that disputed issues of material fact remained for trial. Winter appeals the summary judgment in favor of Aschenbrenner.

Our review of summary judgment is de novo. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The party moving for summary judgment has the burden to establish the absence of a factual dispute and that he is entitled to judgment as a matter of law. *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 476–77 (1980). In a legal malpractice action, the plaintiff has the burden to prove the attorney's negligence, but also must establish that, but for the attorney's negligence, the client would have been successful in the underlying action. *Lewandowski v. Continental Cas. Co.,* 88 Wis. 2d 271, 276 N.W.2d 284, 286 (1979).

Winter argues that Grosskopf's damages resulted from Aschenbrenner's failure to adequately defend the foreclosure suit. Winter contends that but for Aschenbrenner's negligence, the trial court in the foreclosure action would not have erroneously concluded that the mortgages had priority over the lease as a matter of law. We do not decide the issue of whether Aschenbrenner committed malpractice because this is not the issue before us on appeal. Rather, we conclude that the trial court erred when it ruled that Aschenbrenner was absolved from liability as a matter of law. We conclude that the respective priorities of the lease and the subsequently executed mortgages depend on unresolved factual issues and, therefore, summary judgment absolving Aschenbrenner of liability was inappropriate.

Here, the trial court predicated its judgment absolving Aschenbrenner on its erroneous conclusion that sec. 706.11, Stats., established the priority of the subsequent mortgage over the prior unrecorded lease, and therefore Grosskopf's leasehold interest was extinguished as a matter of law. The trial court ruled, in effect, that a lease was a lien governed by sec. 706.11. We disagree and conclude that sec. 706.11 does not apply to leases.[4]

The interpretation of a statute is a question of law, which we review without deference to the trial court. *Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct. App. 1983). Our first resort is to the statutory language itself. *Id.* In absence of ambiguity, judicial construction is not permitted, and the words of the statute must be given their obvious and ordinary meaning. *Id.* at 313, 332 N.W.2d at 823–24.

We conclude that the obvious and ordinary meaning of sec. 706.11, Stats., limits its application to the priority of certain mortgages over subsequently filed liens, and

[4]Section 706.11 provides in part:

Priority of certain mortgages, trust funds. (1) Whenever any of the following mortgages has been duly recorded, it shall have priority over all liens upon the mortgaged premises and the buildings and improvements thereon, except tax and special assessment liens filed after the recording of such mortgage:

(a) Any mortgage executed to a federal savings and loan association organized and existing under the laws of the United States.

(b) Any mortgage executed to the department of veterans affairs under s. 45.352, 1971 stats.

(c) Any mortgage assigned to or executed to the department of veterans affairs or the authority under subch. II of ch. 45.

(d) Any mortgage executed to a state or national bank or to a state or federally chartered credit union.

(2) State savings and loan associations shall have the priorities specified under s. 215.21(4).

582

does not apply to leases.[5] The term "lease" is not included within the scope of the statutory language, and we conclude that the term "lien" does not encompass a lease. Although both encumber realty, they do so in different ways. The term lien is used indiscriminately at times.[6] The ordinary meaning of lien, however, is: "a charge upon real or personal property for the [payment] of some debt . . ." Webster's Third New Int'l Dictionary 1306 (4th ed. 1976). This definition is consistent with the definition found in sec. 242.01(8), Stats.[7]

In contrast, a lease transfers possessory interests in land. It is defined as: "[A] contract which conveys lands, tenements, or hereditaments for life, for a term of years, or at will or for any less interest than that of the lessor, usu[ally] for a specified rent . . .." Webster's Third New Int'l Dictionary 1286 (4th ed. 1976). This definition concurs with the statutory definition found in sec. 704.01, Stats.[8]

Because the plain and obvious language of sec. 706.11, Stats., refers solely to liens, not leases, the trial court's reliance on this section was erroneous. We observe that sec. 706.11(3) also provides a trust fund for

---

[5]*See Marine Bank v. Hietpas, Inc.,* 149 Wis. 2d 587, 439 N.W.2d 604 (Ct. App. 1989). We observe that sec. 706.11 was held ambiguous in another respect not material to our decision in this case.

[6]For example, *see* sec. 842.01, Stats., where the term lien, as used in partition actions, "includes encumbrance."

[7]Section 242.01(8) provides: " 'Lien' means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien or a statutory lien."

[8]Section 704.01 provides: " 'Lease' means an agreement, whether oral or written, for transfer of possession of real property, or both real and personal property, for a definite period of time."

payment of all claims due or to become due "for lienable labor and materials . . .." This reference to construction liens demonstrates the statutory objective to address the respective rights of mortgagees and lien holders. In absence of any reference to leases, we conclude that the statute establishes priority of certain recorded mortgages over subsequently filed liens, but does not apply to leases.

Therefore, the mortgagee's rights are subject to those of the lessee unless the failure to record the lease affected the priority established by sec. 706.08, Stats., the race-notice statute. Section 706.08 may establish the priority of the subsequent mortgage over the prior unrecorded lease, but only if the mortgagee is in good faith, *i.e.,* had no knowledge of the prior lease.[9] *See Bump v. Dahl,* 26 Wis. 2d 607, 612-13, 133 N.W.2d 295, 299 (1965).

A purchaser or mortgagee in good faith is one without notice of existing rights in land. *Id.* at 613, 133 N.W.2d at 299. Recording and public records are two sources of notice. The third is "the land itself, to discover by observation the rights which arise outside the recording system by virtue of possession or use." *Kordecki v. Rizzo,* 106 Wis. 2d 713, 719 n.5, 317 N.W.2d 479, 483 n.5 (1982). (Citations omitted.) Thus, a mortgagee may be chargeable with notice of a tenant's possession under a lease.[10] *Miller v. Green,* 264 Wis. 159,

---

[9]Section 706.08(1)(a), Stats., provides: "Every conveyance . . . which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for valuable consideration . . .."

[10]A mortgagee is a purchaser within the meaning of sec. 706.08, Stats. *See Claridge v. Evans,* 137 Wis. 218, 223, 118 N.W. 198, 199-200 (1908).

163–64, 58 N.W.2d 704, 706–07 (1953); *see also* J. Mac-Donald & W. Raushenbush, Wisconsin Real Est. Law, sec. 13.05 at 13–2, 13–3 (1989). Whether De Pere Savings and Loan had actual or constructive notice of the tenant's rights is a factual determination required in order to determine whether it was in good faith under sec. 706.08, Stats.[11]

We reject Aschenbrenner's contention that we should affirm because the lease by its terms subordinates itself to subsequent mortgages. The trial court did not rely on the lease's subordination clause,[12] apparently because it determined that sec. 706.11, Stats., controlled. In denying Winter's motion for summary judgment, however, the trial court found that the subordination clause was ambiguous. We agree. Although the lease purports to subordinate itself to certain mortgages, it also appears to reserve to the tenant the right of possession in the event of a foreclosure. If a contract is ambiguous, intent is a factual question to be determined by the trial court. *Armstrong v. Colletti,* 88 Wis. 2d 148, 153, 276 N.W.2d 364, 366 (Ct. App. 1979). Questions of fact are not to be determined on summary judgment. *Grams,* 97 Wis. 2d at 338–39, 294 N.W.2d at 477.[13]

---

[11]Possession of land is constructive notice of the rights of the possessor, and may be sufficient to charge a purchaser with knowledge of an unrecorded conveyance, "if such possession is visible, open, clear, full, notorious, . . . inconsistent with, or adverse to the title or interest of the vendor." *Bump,* 26 Wis. 2d at 612, 133 N.W.2d at 298.

[12]*See* note 1, *infra.*

[13]We are also unpersuaded that Aschenbrenner is entitled to summary judgment because the note demonstrates the lease is a lien because the note was "secured" by the lease. This argument

We are unpersuaded by Aschenbrenner's remaining arguments. Because these arguments were not developed in the briefs, nor ruled upon by the trial court, we dispose of them summarily. We disagree that Winter must establish an attorney-client relationship between himself and Aschenbrenner in order to prevail. A fair reading of Winter's third-party complaint demonstrates that he is seeking recovery from Aschenbrenner on alternative theories of indemnification or contribution, which do not require privity between Winter and Aschenbrenner. *See Johnson v. Heintz,* 73 Wis. 2d 286, 295, 243 N.W.2d 815, 822 (1976); Restatement (Second) of Torts, sec. 886A and 886B (1979). A claim for contribution may be brought by third-party practice, which is an appropriate procedure to facilitate efficiency and eliminate repetitious litigation. *Johnson,* 73 Wis. 2d at 295, 243 N.W.2d at 822; *see also* sec. 802.07(6), Stats.

Finally, we conclude that Winter's third-party complaint is not barred by the doctrine of collateral estoppel. The issue of Aschenbrenner's negligence in the previous foreclosure action has not been litigated. *See Kichefski v. American Family Mut. Ins. Co.,* 132 Wis. 2d 74, 80, 390 N.W.2d 76, 78 (Ct. App. 1986). Consequently, there is no collateral estoppel.

Because the trial court misinterpreted sec. 706.11, Stats., and factual issues exist as to the effect of sec. 706.08 and the interpretation of the lease, we conclude that the trial court erred when it absolved Aschenbrenner of liability as a matter of law. The issue of Aschenbrenner's liability for legal malpractice remains open.

raises factual issues not appropriate for summary judgment determination.

586

*By the Court.*—Judgment reversed and cause remanded for further proceedings.