GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA and Quarles & Brady, a Partnership, Plaintiffs-Appellants-Cross Respondents,†

v.

SCHOENDORF & SORGI and Northwestern National Casualty Company, Defendants-Respondents-Cross Appellants,

Thomas J. RHODA and Fremont Indemnity Company, Defendants-Third Party Plaintiffs-Respondents-Cross Appellants,

v.

Thomas J. SCHOENDORF, Michael L. Sorgi, Joseph F. Schoendorf, Jr. and John A. Lynch, Third Party Defendants-Cross Appellants.

Court of Appeals

*No. 94–2042. Oral argument June 9, 1995.—Decided July 11, 1995.*

(Also reported in 537 N.W.2d 33.)

†Petition to review granted.

788

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Terry E. Johnson* and *Peter F. Mullaney* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee. There was oral argument by *Peter F. Mullaney*.

On behalf of the defendants-respondents-cross appellants and third party defendants-cross appellants, the cause was submitted on the briefs of *Jeffrey J. Liotta* and *Sheila M. Gavin* of *Hinshaw & Culbertson* of Milwaukee. There was oral argument by *Jeffrey J. Liotta*.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. This is an appeal and cross-appeal from non-final orders entered by the trial court in a legal/accounting malpractice case.[1] We affirm.

### I.

In December of 1975, Westridge Orthopedics, Ltd., hired Schoendorf & Sorgi's predecessor law firm and Thomas J. Rhoda, an accountant, to establish a pension and profit-sharing plan for Westridge that would qualify under the Internal Revenue Code. In late 1980, Westridge hired Quarles & Brady to review the plan.

---

[1] Leave to appeal was granted by this court on September 19, 1994.

Quarles & Brady determined that the plan did not comply with the applicable law, and although Westridge asked Quarles & Brady to bring the plan into compliance, Quarles & Brady did not do so. The Internal Revenue Service audited Westridge's plan in 1984, and, on March 29, 1985, formally notified Westridge that the plan had been disqualified for the period beginning January 1, 1975, and ending December 31, 1983.

Quarles & Brady and its malpractice carrier, General Accident Insurance Company of America, settled any malpractice claims Westridge could have asserted against Quarles & Brady, the Schoendorf firm, and Rhoda, and then brought this action seeking contribution from both Rhoda and the Schoendorf firm. Quarles & Brady alleges that the Schoendorf firm and Rhoda were negligent in drafting the plan and in not submitting it to the Internal Revenue Service for approval. Rhoda and the Schoendorf firm sought summary judgment dismissing Quarles & Brady's contribution claim, arguing that Quarles & Brady was a successive tortfeasor and thus had no right to contribution. Rhoda and the Schoendorf firm also argued that any claim that Quarles & Brady might have had for equitable subrogation against them was barred by the six-year statute of limitations.[2] The trial court granted sum-

[2] Quarles & Brady's complaint sought contribution. The trial court and the parties have also treated Quarles & Brady's claim as one founded in "equitable subrogation." In essence, this is a claim for indemnification. Indemnification is an alternate route by which a party who has paid more than his or her share of another's damages may recoup that excess from a person who is also responsible for the damages. *See Brown v. LaChance,* 165 Wis. 2d 52, 64, 477 N.W.2d 296, 302 (Ct. App. 1991) ("Unlike contribution where liability is shared, indemnity is a principle

mary judgment to Rhoda and the Schoendorf firm on the contribution matter, but denied the motion on the statute of limitations issue. Rhoda and the Schoendorf firm then sought an order *in limine* to exclude from the trial any evidence relating to tax assessments against Westridge for the years 1980 through 1983. The trial court granted the motion in part, ruling that Quarles & Brady was solely responsible for the assessments for the years 1981 through 1983, but that the evidence was unclear as to who was responsible for the assessments in connection with 1980.

## II.

Summary judgment is used to determine whether there are any disputed issues for trial. *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Our review of a trial court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

### A. *Claim for contribution.*

As noted, Quarles & Brady seeks contribution from Rhoda and the Schoendorf firm for the payments Quarles & Brady made to settle Westridge's possible claims for professional malpractice. There are three prerequisites to a claim for contribution in negligence cases: "1. Both parties must be joint negligent wrong-doers; 2. they must have common liability because of

that 'shift[s] the loss from one person who has been compelled to pay to another who on the basis of equitable principles should bear the loss.' ") (citation omitted, brackets by *Brown*).

such negligence to the same person; 3. one such party must have borne an unequal proportion of the common burden." *Farmers Mut. Automobile Ins. Co. v. Milwaukee Automobile Ins. Co.*, 8 Wis. 2d 512, 515, 99 N.W.2d 746, 748 (1959). Whether there is "common liability" among tortfeasors is determined at the time of the event causing injury. *Id.*, 8 Wis. 2d at 519, 99 N.W.2d at 750 ("[T]o recover on the basis of contribution, nonintentional negligent tort-feasors must have a common liability to a third person at the time of the accident created by their concurring negligence."). Thus, successive tortfeasors—those whose negligent acts produce discrete, albeit overlapping or otherwise related, injuries—may not assert claims of contribution against one another. *Fisher v. Milwaukee Elec. Ry. & Light Co.*, 173 Wis. 57, 60, 180 N.W. 269, 270–271 (1920) (physician's aggravation of injuries to passenger thrown from Milwaukee Electric streetcar); *see also Rusch v. Korth*, 2 Wis. 2d 321, 326, 86 N.W.2d 464, 467 (1957) (contribution permitted where "independent but concurring negligence of two persons has contributed to an *indivisible* injury") (emphasis added), *overruled on other grounds, Farmers Mut. Automobile Ins. Co.*, 8 Wis. 2d at 519, 99 N.W.2d at 750.

The Internal Revenue Service's assessments in connection with the Westridge plan were distinct for each year that the plan did not comply with the law. Thus, assuming that Rhoda and the Schoendorf firm were negligent in connection with Westridge's pension and profit-sharing plan, the evidence is undisputed that there would have been no damage resulting from that negligence for the years starting with 1981 if

Quarles & Brady had not also been negligent.[3] By the same token, it is undisputed that Quarles & Brady's negligence did not cause any damages for the years preceding its involvement, and Quarles & Brady is thus not liable for that damage. *See* RESTATEMENT (SECOND) OF TORTS § 879 comment b (1977). Accordingly, although Rhoda and the Schoendorf firm, if negligent, would be liable to Westridge for each of the years for which assessments were levied, *see Butzow v. Wausau Mem. Hosp.*, 51 Wis. 2d 281, 285–286, 187 N.W.2d 349, 351–352 (1971); RESTATEMENT (SECOND) OF TORTS § 879 comment b (1977), Quarles & Brady is only liable for the consequences of its own negligence and is neither a joint tortfeasor with Rhoda and the Schoendorf firm nor does it have common liability with Rhoda and the Schoendorf firm for the years before Quarles & Brady was retained. Thus, contribution between the parties is not the proper remedy for any alleged overpayment by one of them. *See Butzow*, 51 Wis. 2d at 287, 187 N.W.2d at 352 (although tortfeasors "may have a joint liability in part[,] such joint liability does not give rise to any right of contribution").[4] Further, Quarles & Brady may

---

[3] Both Rhoda and the Schoendorf firm deny that they were negligent. In a letter dated March 21, 1985, to its malpractice-insurance agent, Quarles & Brady admitted that it was "responsible" for the damages resulting from the Internal Revenue Service assessments against Westridge for the years 1981 through 1983.

[4] If one tortfeasor pays to the plaintiff compensation for damages caused by the other tortfeasor, it may recover in subrogation those damages from the other tortfeasor even though the contribution route is barred. *Fisher v. Milwaukee Elec. Ry. & Light Co.*, 173 Wis. 57, 62, 180 N.W. 269, 271 (1920) (physician's aggravation of injuries to passenger thrown from Milwaukee Electric streetcar).

not recoup its settlement of the assessments levied for the years 1981 through 1983 because it could have prevented the assessments for those years. *See id.*, 51 Wis. 2d at 287, 187 N.W.2d at 352 (physician whose negligence aggravated plaintiff's first injury could seek contribution for damages arising out of that aggravation from tortfeasor responsible for first injury). Simply put, "[t]he right of contribution is founded upon principles of equity and natural justice," *Wait v. Pierce*, 191 Wis. 202, 225, 210 N.W. 822, 823 (1926), and it does not comport with those principles to permit a tortfeasor whose negligence either caused or failed to prevent further injury to get contribution from a prior tortfeasor for damages resulting from that further injury. The trial court's grant of summary judgment to Rhoda and the Schoendorf firm is affirmed.[5]

B. *Subrogation and the assessments for the years 1981 through 1983.*

---

[5] In urging reversal, Quarles & Brady relies on two cases that are inapposite in this context: *Brown v. LaChance*, 165 Wis. 2d 52, 477 N.W.2d 296 (Ct. App. 1991), and *Grosskopf Oil, Inc. v. Winter*, 156 Wis. 2d 575, 457 N.W.2d 514 (Ct. App. 1990). *Brown* concerned the alleged combined negligence of attorneys in connection with a single transaction, which, unlike the situation here, did not result in discrete year-by-year damages that could have been prevented if the subsequent tortfeasor were not negligent. *See id.*, 165 Wis. 2d at 58–59, 477 N.W.2d at 299–300. Although *Grosskopf* concerned alleged successive tortfeasors in the context of a legal-malpractice case, *id.*, 156 Wis. 2d at 579–581, 457 N.W.2d at 516–517, it neither discussed nor decided whether contribution was an appropriate remedy, *id.*, 156 Wis. 2d at 586, 457 N.W.2d at 519.

A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted). As noted, a tortfeasor who pays more than its share of a plaintiff's damages may recover against a co-tortfeasor for the portion attributable to that co-tortfeasor. *Fisher*, 173 Wis. at 62, 180 N.W. at 271. This recoupment, whether called indemnification, *see Brown v. LaChance*, 165 Wis. 2d 52, 64, 477 N.W.2d 296, 302 (Ct. App. 1991), or subrogation, *see Fisher*, 173 Wis. at 62, 180 N.W. at 271, as with contribution discussed in Part A, above, is a remedy founded in equity. *See Interstate Fire & Casualty Co. v. City of Milwaukee*, 45 Wis. 2d 331, 334, 173 N.W.2d 187, 189 (1970). It permits those who pay a claim that "in equity should have been satisfied by another" to recover that payment from the person or entity primarily liable. *Ibid.; Fisher*, 173 Wis. at 60, 180 N.W. at 270–271 (tortfeasor who aggravates plaintiff's injuries is liable to first tortfeasor for damages paid by the first tortfeasor that "are primarily due" to the second tortfeasor's negligence). The trial court ruled that Quarles & Brady could not introduce evidence of its settlement payments for the years 1981 through 1983 because, in essence, Quarles & Brady could not recover from Rhoda or the Schoendorf firm for the assessments levied for those years. Given the undisputed evidence before the trial court that assessments for the years 1981 through 1983 would not have been levied if Quarles & Brady had timely fixed the defects in the Westridge plan, we agree that Quarles & Brady may

not recover from either Rhoda or the Schoendorf firm the portion of its settlement that is attributable to those assessments. Accordingly, evidence of those assessments was not relevant to Quarles & Brady's claim against Rhoda and the Schoendorf firm. The trial court's order *in limine* is affirmed.[6]

### C. *Statute of limitations.*

Rhoda and the Schoendorf firm cross-appeal from the trial court's denial of their summary judgment motion seeking dismissal of Quarles & Brady's claim, which, they argue, is barred by the six-year statute of limitations applicable to legal malpractice actions. *See Acharya v. Carroll*, 152 Wis. 2d 330, 334–338, 448 N.W.2d 275, 277–279 (Ct. App. 1989) (holding that § 893.53, STATS., governs legal malpractice actions). Rhoda and the Schoendorf firm argue that Quarles & Brady's recoupment rights against them are barred because Westridge knew by December, 1980, that the pension and profit sharing plan was defective, and Quarles & Brady's action was commenced in January of 1991, more than six years later. Quarles & Brady, on the other hand, argues that the statute of limitations did not start to run at least until Westridge was notified, in March of 1985, that the plan had been

---

[6] This issue may be moot. In their brief before this court, Quarles & Brady and its insurance carrier represent that at the time the brief was written, they "cannot present any evidence of the $260,000 they paid" to settle the tax assessments for 1981 through 1983, "and therefore cannot recover any portion of that money." We address the issue nevertheless because it may ripen following remand. *Cf. State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal).

disqualified. Thus, Quarles & Brady contends that the January, 1991, commencement of this action was timely.

Although not briefed by the parties, and only tangentially discussed at oral argument, an action for contribution and, by implication, indemnity or any equity-based right of recoupment, accrues when payment is made, not, as the trial court and the parties assumed, when the underlying tort accrued, because it is then that the "inchoate claim" for recoupment "ripened into maturity, and whatever the applicable period of limitations, the time then started running." *State Farm Mut. Automobile Ins. Co. v. Schara*, 56 Wis. 2d 262, 266, 201 N.W.2d 758, 759–760 (1972); *see also Milwaukee Mut. Ins. Co. v. Priewe*, 118 Wis. 2d 318, 321, 348 N.W.2d 585, 586 (Ct. App. 1984).[7] Absent a more specific statute setting the time within which such actions must be brought, the six-year statute of limitations applicable to implied contracts, § 893.43, STATS., governs. *Schara*, 56 Wis. 2d at 267–268, 201 N.W.2d at 760–761 (cause of action for contribution is "based on a contract implied at law to rectify the inequity resulting when one tortfeasor pays more than his share of a common liability"). Section 893.92, STATS., however, has established a one-year statute of limitations for actions for "contribution."[8] In selecting an appropriate statute of limitations, we must look at the

---

[7] The basis for our decision "is not circumscribed by the parties' legal analyses." *See Watts v. Watts*, 152 Wis. 2d 370, 384, 448 N.W.2d 292, 298 (Ct. App. 1989).

[8] Section 893.92, STATS., provides:

**Action for contribution.** An action for contribution based on tort, if the right of contribution does not arise out of a prior judgment allocating the comparative negligence between the parties, shall be

"nature of the transaction" involved. *See Schara*, 56 Wis. 2d at 267, 201 N.W.2d at 760. Equity based recoupment, whether called "indemnity," "equitable subrogation," or "contribution," arises from the payment to the plaintiff by one tortfeasor of more than that tortfeasor's fair share—whether the tortfeasors are joint tortfeasors and share a common liability for all of the plaintiff's damages, or whether they are successive us tortfeasors, as here. Section 893.92 is thus applicable to Quarles & Brady's claims against Rhoda and the Schoendorf firm. Quarles & Brady commenced this action within one year of its payment of the settlement for which it seeks recoupment. Accordingly, the action is timely.[9]

commenced within one year after the cause of action accrues or be barred.

[9] The result here is the same under the parties' analysis, which, as noted, mistakenly ties the statute of limitation for recoupment under these circumstances to the statute of limitation applicable to the underlying tort.

An action accrues for statute-of-limitations purposes when a plaintiff knows or should know that he or she has " 'a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.' " *Hennekens v. Hoerl*, 160 Wis. 2d 144, 152, 160 & n.14, 465 N.W.2d 812, 815, 819 & n.14 (1991) (citation omitted).

A tort claim is not "capable of present enforcement" until the plaintiff has suffered actual damage. Actual damage is harm that has already occurred or is reasonably certain to occur in the future. Actual damage is not the mere possibility of future harm. *Meracle v. Children's Serv. Soc.*, 149 Wis. 2d 19, 26–27, 437 N.W.2d 532, [536] (1989).

*Hennekens*, 160 Wis. 2d at 152–153, 465 N.W.2d at 816 (footnotes omitted). "Actual damage" can occur even though there is not "a contemporaneous monetary loss" if the plaintiff has sustained "injury to a legal interest or loss of a legal right." *Id.*, 160

*By the Court.*—Orders affirmed.

Wis. 2d at 153–154, 465 N.W.2d at 816. Rhoda and the Schoendorf firm argue that Westridge suffered actual damage in 1975, when it received "a defective plan in 1975, even though Westridge had not yet suffered any monetary loss." We disagree.

In *Hennekens*, a legal malpractice case, the plaintiff suffered actual damage when he lost the legal right to rescind a promissory note that he had given in conjunction with his purchase of real property on a land contract when the land-contract agreement became void because the plaintiff failed to fulfill conditions to the closing. *Id.*, 160 Wis. 2d at 147–160, 465 N.W.2d at 813–819. The fact that suit to collect on the note was not started until four years later did not alter *Hennekens'* conclusion that the plaintiff suffered actual damage—the loss of a legal interest—when his rights *vis a vis* the note and the void land-contract agreement were fixed. *Ibid.* Unlike the situation in *Hennekens*, where the plaintiff was irretrievably liable on the promissory note and suffered injury to his legal interest once the land-contract agreement became void, the rights of Westridge in connection with its pension and profit sharing plan were not fixed until after the plan was disqualified and attempts failed to persuade the Internal Revenue Service not to, in effect, apply that disqualification retroactively. *See Mann v. The AEtna Ins. Co.*, 38 Wis. 114, 118–119 (1875) (action by surety to recoup money paid on a judgment did not accrue until after judgment reversed by United States Supreme Court). In essence, although there was the potential for damage in 1975 when an allegedly defective plan was given to Westridge, and Westridge knew of that potential in December of 1980, the damage was inchoate until the plan could no longer be brought into compliance for the assessment years. This case is thus similar to *Meracle*, upon which *Hennekens* relied.

In *Meracle*, a couple adopted a child who was at risk for developing Huntington's disease despite the couple's instructions to the adoption agency that they wanted only a healthy

child. *Id.*, 149 Wis. 2d at 22–23, 437 N.W.2d at 533. The couple sued the adoption agency one year after the child developed Huntington's disease, but four years after they knew of the risk. *Id.*, 149 Wis. 2d at 23–24, 437 N.W.2d at 533. *Meracle* reversed the trial court's determination that the suit was barred by the applicable three-year statute of limitations, holding that until the Huntington's disease was diagnosed the couple had not suffered actionable damage. 149 Wis. 2d at 26–30, 437 N.W.2d at 535–536. By the same token here, although Westridge knew in 1980 that it was at risk because of a defective plan, that risk did not mature into an irretrievable liability until its rights were fixed by Internal Revenue Service action less than six years prior to the commencement of this action by Quarles & Brady. Thus, *Denzer v. Rouse*, 48 Wis. 2d 528, 180 N.W.2d 521 (1970), and *Boehm v. Wheeler*, 65 Wis. 2d 668, 223 N.W.2d 536 (1974), upon which Rhoda and the Schoendorf firm rely are not germane. *Boehm*, a legal malpractice action alleging a failure to timely file a patent application, held that the cause of action accrued when the plaintiffs lost their right to get the patent. *Boehm*, 65 Wis. 2d at 678, 223 N.W.2d at 541. *Denzer*, a legal malpractice action alleging negligence in the drafting of a clause in a deed describing the property, held that the cause of action accrued when the real estate transaction was consummated, because it was then that the rights of the parties were fixed, even though the clause was not judicially interpreted until twenty years later. *Denzer*, 48 Wis. 2d at 530, 533, 180 N.W.2d at 522–523, 524. The rule that Rhoda and the Schoendorf firm seek is not only contrary to the line of precedent running through *Hennekens*, but would have the unfortunate result of compelling the premature filing of lawsuits at the first faint scent of potential injury.