GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, and Quarles & Brady, a partnership, Plaintiffs-Appellants-Cross Respondents-Petitioners,

v.

SCHOENDORF & SORGI and Northwestern National Casualty Company, Defendants-Respondents-Cross Appellants-Cross Petitioners,

Thomas J. RHODA and Fremont Indemnity Company, Defendants-Third Party Plaintiffs-Respondents-Cross Appellants-Cross Petitioners,

v.

Thomas J. SCHOENDORF, Michael L. Sorgi, Joseph F. Schoendorf, Jr., and John A. Lynch, Third Party Defendants-Cross Appellants-Cross Petitioners.

Supreme Court

*No. 94–2042. Oral argument May 29, 1996.—Decided June 21, 1996.*

(Also reported in 549 N.W.2d 429.)

For the plaintiffs-appellants-cross respondents-petitioners there were briefs by *Terry E. Johnson, Peter F. Mullaney* and *Peterson, Johnson & Murray, S.C.*, Milwaukee and oral argument by *Peter F. Mullaney.*

For all the cross petitioners there were briefs by *Jeffrey J. Liotta, Sheila M. Gavin* and *Hinshaw & Culbertson*, Milwaukee and *Robert F. Johnson* and *Cook & Franke, S.C.*, Milwaukee and oral argument by *Jeffrey J. Liotta.*

ROLAND B. DAY, C.J.    Petitioners General Accident Insurance Company of America and Quarles & Brady (collectively, "Quarles & Brady") seek review of a court of appeals decision[1] affirming the non-final orders of the circuit court of Milwaukee County, Arlene D. Connors, Judge. The circuit court had dismissed Quarles & Brady's contribution claim and granted in part a motion in limine excluding certain evidence relating to tax assessments at issue in Quarles & Brady's claim for equitable subrogation. Cross-Peti-

---

[1] *General Accident Ins. Co. v. Schoendorf & Sorgi*, 195 Wis. 2d 784, 537 N.W.2d 33 (Ct. App. 1995) [hereinafter *Schoendorf*].

tioners, the Schoendorf & Sorgi firm and others (collectively, "Schoendorf") seek review of the circuit court's denial of their motion for summary judgment dismissing Quarles & Brady's equitable subrogation claim because the claim was allegedly barred by the applicable statute of limitations, which was also affirmed by the court of appeals. We conclude that the court of appeals correctly affirmed the circuit court on all issues, although we affirm the circuit court's ruling on the statute of limitations issue on a different rationale.

In 1975, Westridge Orthopedics, Ltd., retained Schoendorf & Sorgi's predecessor law firm and Thomas J. Rhoda, an accountant, to establish a pension and profit-sharing plan (the plan) that would qualify under the Internal Revenue Code. In late 1980, Westridge hired Quarles & Brady to review the plan.[2] Quarles & Brady determined that the plan did not comply with the applicable law. Although Westridge asked Quarles & Brady to bring the plan into compliance, Quarles & Brady did not do so.[3]

The Internal Revenue Service (IRS) audited Westridge's plan in 1984, and, on March 29, 1985, formally notified Westridge that the plan had been disqualified

---

[2] Westridge did not continue to retain the Schoendorf firm in this matter, and thus Quarles & Brady and the Schoendorf firm were never jointly retained.

[3] In a letter to its liability carrier, Quarles & Brady stated that the task of preparing the necessary documents was forgotten. Quarles & Brady also stated that it had notified its clients of its error and had advised them that it would accept responsibility for the error. The letter specified that Quarles & Brady believed it was responsible for damages resulting from the assessment of additional tax liabilities against the plan for the years 1981, 1982, and 1983.

for the period beginning January 1, 1975, and ending December 31, 1983. Quarles & Brady pursued an administrative appeal of the disqualification; this appeal was unsuccessful. The IRS subsequently imposed tax assessments against Westridge's plan for the tax years 1979 to 1983.[4] The IRS specified the assessment for each tax year in its notice.

Quarles & Brady and its malpractice carrier, General Accident Insurance Company of America, in 1989 and 1990 settled any malpractice claims Westridge could have asserted against Quarles & Brady, the Schoendorf firm, and Rhoda. On January 28, 1991, Quarles & Brady brought an action seeking contribution from Rhoda, the Schoendorf firm, and their insurers.[5] Quarles & Brady alleged that the Schoendorf firm and Rhoda were negligent in drafting the plan and in not submitting it to the Internal Revenue Service for approval. Rhoda and the Schoendorf firm sought summary judgment dismissing Quarles & Brady's contribution claim, arguing that Quarles & Brady was a successive tortfeasor and thus had no right to contribution. Rhoda and the Schoendorf firm also argued that any claim that Quarles & Brady might have had for equitable subrogation against them was barred by the statute of limitations.

---

[4] The IRS did not impose assessments for the years before 1979 because the statute of limitations had run on those years.

[5] Although Quarles & Brady's complaint sought contribution, the circuit court also treated the claim as founded in equitable subrogation. "Subrogation is an equitable doctrine . . . which is available when someone other than a mere volunteer pays a debt or demand which should have been satisfied by another." *Perkins v. Worzala*, 31 Wis. 2d 634, 637, 143 N.W.2d 516 (1966).

The circuit court granted summary judgment to Rhoda and the Schoendorf firm on the contribution matter, but denied the motion on the statute of limitations issue. Rhoda and the Schoendorf firm then sought an order in limine to exclude from the trial any evidence relating to tax assessments against Westridge for the years 1980 through 1983. The circuit court granted the motion in part, ruling that Quarles & Brady was solely responsible for the assessments for the years 1981 through 1983, but that the evidence was unclear as to who was responsible for the assessments for 1980. The court of appeals granted the parties leave to appeal the circuit court's orders, and affirmed the circuit court on all issues.

We first review the circuit court's grant of summary judgment dismissing Quarles & Brady's contribution claim. Our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The circuit court concluded that the parties were successive tortfeasors because their conduct was separated by five years and because their conduct had produced discrete, apportionable harm. The harm was apportionable because of the specified yearly tax assessments imposed against the plan. We conclude, as did the court of appeals, that the circuit court correctly dismissed Quarles & Brady's contribution claim, because an action for contribution cannot lie when the parties are successive tortfeasors.

The three prerequisites to a contribution claim are "1. Both parties must be joint negligent wrongdoers; 2. they must have common liability because of such negligence to the same person; 3. one such party must have borne an unequal proportion of the common burden." *Farmers Mut. Auto. Ins. Co. v. Milwaukee Auto. Ins.*

*Co.*, 8 Wis. 2d 512, 515, 99 N.W.2d 746 (1959); *see also Giese v. Montgomery Ward*, 111 Wis. 2d 392, 404, 331 N.W.2d 585 (1983). "[T]o recover on the basis of contribution, nonintentional negligent tort-feasors must have a common liability to a third person at the time of the accident created by their concurring negligence." *Farmers Mut.*, 8 Wis. at 519. Thus, as the court of appeals in this case reasoned, "successive tortfeasors—those whose negligent acts produce discrete, albeit overlapping or otherwise related, injuries—may not assert claims of contribution against one another." *Schoendorf*, 195 Wis. 2d at 792 (citing, inter alia, *Fisher v. Milwaukee Elec. Ry. & Light Co.*, 173 Wis. 57, 60, 180 N.W. 269 (1920)).

Quarles & Brady argues that the harm in this case is indivisible, and that the Schoendorf firm's negligent drafting could be a cause of all the assessments leveled against the plan. This argument, however, ignores the circuit court's finding, which we conclude is supported by the record, that Quarles & Brady was solely responsible for the assessments made against the plan for and after 1981. There would have been no such assessments, therefore, if Quarles & Brady had followed through on its client's request to correct the plan. Furthermore, the Schoendorf firm was no longer retained after Westridge retained Quarles & Brady; the Schoendorf firm thus did not have the ability to correct the plan.

■

The situation presented in this case is in this respect dissimilar to more common tort situations, such as a physical injury caused by one party which is then aggravated by a second party (malpractice by a treating doctor, for example), or a physical injury caused by the combined negligence of two or more par-

ties (a multiple-car accident, for example). In these cases, liability is joint. *See Butzow v. Wausau Memorial Hosp.*, 51 Wis. 2d 281, 285-87, 187 N.W.2d 349 (1971); *Restatement (Second) of Torts* § 879 (1979).[6] In the present case, however, the only harm takes the form of yearly assessments. The circuit court's conclusion that Quarles & Brady was responsible for assessments occurring after its failure to correct the plan, coupled with the fact that Schoendorf was no longer in a position to correct its negligence, creates a plain division of liability, falling first on Schoendorf, then on Quarles & Brady.[7] The fact that the assessments are continuous (i.e., they were imposed on a yearly basis over a consecutive series of years) does not mean they are indivisible, or that they spring from one cause. Rather, they are best characterized as resulting from successive torts. Unlike the damages suffered in more typical tort cases (such as the injuries to the plaintiff in *Butzow*, 51 Wis. 2d at 283, consisting of a broken hip suffered in a fall and the later aggravation of this

[6] As this Restatement section and its comments make clear, in the first situation the parties are jointly liable only for the aggravation, while in the second situation the parties are liable for the entire harm. Nothing in our decision today alters these black-letter rules of joint liability.

[7] The precise point at which the assessments should be divided is not at issue in this opinion, in which our review is limited to the circuit court's non-final orders. However, we note that Schoendorf denies all allegations of negligence, and furthermore has argued that none of the assessments would have occurred if Quarles & Brady had amended the plan in 1980 (due to an "amnesty" program then in effect), so there may ultimately be a determination that all of the assessments were caused by Quarles & Brady. These determinations will be made on remand. For purposes of this discussion, we assume only the possibility of negligence on the part of Schoendorf.

105

injury), the damages in this case do not combine to form an indivisible harm. For this reason, we find much of the precedent[8] on which the parties ask us to rely inapplicable because the cases do not involve a divisible harm springing from the actions of successive tortfeasors. However, *Butzow* and *Fisher* remain valid for the general proposition that an earlier tortfeasor may be liable for damages inflicted by a successive tortfeasor.

We further note, as did the court of appeals below, that "[t]he right of contribution is founded upon principles of equity and natural justice." *Schoendorf*, 195 Wis. 2d at 794 (quoting *Wait v. Pierce*, 191 Wis. 202, 225, 210 N.W. 822 (1926)). The facts stated above lead us to conclude that Quarles & Brady's inaction produced a harm separate from Schoendorf's negligence. They are thus successive tortfeasors, and because successive tortfeasors may not be joined in a contribution action, Quarles & Brady's contribution claim must fail. *See Fisher*, 173 Wis. at 60.[9]

---

[8] Quarles & Brady relies on *Brown v. LaChance*, 165 Wis. 2d 52, 477 N.W.2d 296 (Ct. App. 1991) and *Grosskopf Oil, Inc. v. Winter*, 156 Wis. 2d 575, 457 N.W.2d 514 (Ct. App. 1990). The court of appeals in its opinion also distinguished these cases. *See Schoendorf*, 195 Wis. 2d at 794 n.5.

[9] For similar reasons, we reject Quarles & Brady's argument that finding it solely liable for the assessments imposed after it agreed to correct the plan is effectively an application of the "last clear chance" doctrine, a doctrine not recognized in this state, *see Wilmet v. Chicago & Northwestern Ry. Co.*, 233 Wis. 335, 346, 289 N.W. 815 (1940). Because we conclude there was no common liability in this case, we are not relieving Schoendorf of liability for the portion of the harm caused by Quarles & Brady; rather, we are concluding that the harm caused by Quarles & Brady was distinct and Schoendorf was never liable

To summarize our analysis of this issue, this case is admittedly unusual in that the IRS has provided specific figures allowing us to apportion the harm with rare precision. We should not alter our analysis, however, merely because the present situation is neatly apportionable while the vast majority of cases are not. We conclude, therefore, that the circuit court correctly granted summary judgment dismissing Quarles & Brady's contribution claim.

■

Although Quarles & Brady cannot seek contribution, it may still recover any portion of the settlement paid to Westridge that is attributable to Schoendorf's negligence. The recovery of such compensation is possible through legal subrogation. *See Fisher*, 173 Wis. 57, 62. Subrogation is derived "from the equitable doctrine of preventing unjust enrichment and placing the loss ultimately on the wrongdoers," *Employers Health Ins. v. General Casualty Co.*, 161 Wis. 2d 937, 956, 469 N.W.2d 172 (1991) (citations omitted), and "permits those who pay a claim that 'in equity should have been satisfied by another' to recover that payment from the person or entity primarily liable," *Schoendorf*, 195 Wis. 2d at 795 (quoting *Interstate Fire & Casualty Co. v. City of Milwaukee*, 45 Wis. 2d 331, 334, 173 N.W.2d 187 (1970)). The circuit court in this case ruled after a motion in limine that Quarles & Brady could not introduce evidence at trial of its settlement payments for the years 1981 through 1983.

Quarles & Brady also seeks review of this ruling. A trial court's discretionary decision to admit or exclude evidence will be upheld if the decision has "a reasona-

for it. Quarles & Brady was a successive tortfeasor in this case, not a joint tortfeasor whose actions relieved another of liability. This case does not involve the "last clear chance" doctrine.

ble basis" and was made "in accordance with accepted legal standards and in accordance with the facts of record." *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983) (citation omitted); *see also Franz v. Brennan*, 150 Wis. 2d 1, 6, 440 N.W.2d 562 (1989). Our conclusion on this issue is compelled by our previous analysis in this case. We have already noted that the circuit court's conclusion that Quarles & Brady was solely responsible for the assessments for the years 1981 through 1983 is supported by the record. Quarles & Brady admitted its responsibility for these assessments in a letter to its insurer,[10] and the assessments for and after 1981 would not have been levied if Quarles & Brady had followed up on its client's request to correct the plan. Because Quarles & Brady cannot recover the portion of the settlement attributable to these assessments from Schoendorf, the circuit court acted within its discretion in ruling that evidence of such assessments would be irrelevant. We therefore affirm on this issue.

The next issue is raised by Schoendorf's cross petition. Schoendorf seeks review of that portion of the court of appeals' decision which affirmed the circuit court's denial of Schoendorf's motion for summary judgment seeking dismissal of Quarles & Brady's claim because it was allegedly filed after the running of the

---

[10] In its briefs before this court, Quarles & Brady argues that its letter to its insurer is not an admission of sole responsibility, but simply a notice of claim and possible damages as required by its insurance policy. Our review, however, is not of this letter, but of the circuit court's conclusion that Quarles & Brady bore responsibility for the 1981-1983 assessments. As already stated, we find the circuit court's conclusion to be supported by the record as a whole, including the facts stated in this opinion.

applicable statute of limitations. The court of appeals, ruling on a basis not briefed by the parties, held that an action for subrogation, like an action for contribution, accrues when payment is made. *Schoendorf*, 195 Wis. 2d at 797. The court of appeals also held that Wis. Stat. § 893.92 (1993-94)[11] should be the applicable statute of limitations in a subrogation action. The court of appeals noted that its result would be the same under the parties' analysis, which reasoned that an action for subrogation would be subject to the statute of limitations for the underlying tort. *Schoendorf*, 195 Wis. 2d at 798-800 n.9.

We conclude that the parties' analysis is correct. As this court has previously observed, subrogation "contemplates full substitution and places the party subrogated in the shoes of the [plaintiff]." *Heifetz v. Johnson*, 61 Wis. 2d 111, 120, 211 N.W.2d 834 (1973) (citation omitted). "The original right of the plaintiff measures the extent of the subrogated party's right." *American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 262, 369 N.W.2d 168 (Ct. App. 1985) (citing *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977)). Thus, in *Heifetz*, this court held that the statute of limitations for subrogation claims is the statute of limitations on the underlying tort, because the running of that statute of limitations extinguishes the rights of the original plaintiff. *Heifetz*, 61 Wis. 2d at 115, 124. The statute of limitations in the

---

[11] Section 893.92 provides:

**Action for contribution.** An action for contribution based on tort, if the right of contribution does not arise out of a prior judgment allocating the comparative negligence between the parties, shall be commenced within one year after the cause of action accrues or be barred.

present case, therefore, is that of the underlying tort, legal malpractice. The court of appeals thus erred in concluding that the cause of action in this case accrued when payment is made, a standard applicable to contribution actions. The court of appeals also erred in applying Wis. Stat. § 893.92, the statute of limitations for contribution actions, to the present case; the correct statute of limitations is the six-year statute of limitations applicable to legal malpractice actions. *See* Wis. Stat. § 893.53 (1993-94);[12] *Hennekens v. Hoerl*, 160 Wis. 2d 144, 148 n.2, 465 N.W.2d 812 (1991). That portion of the court of appeals opinion which held that an action for subrogation accrues when payment is made and Wis. Stat. § 893.92 is the statute of limitations applicable to a subrogation action is hereby overruled.

■ The next question is whether the claim in the present matter was timely filed. This in turn requires a determination of when Westridge's (and hence Quarles & Brady's) cause of action accrued.

> A claim for relief accrues when "there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Barry v. Minahan*, 127 Wis. 570, 573, 107 N.W. 488 (1906). A tort claim is not "capable of present enforcement" until the plaintiff has suffered actual damage.

---

[12] Section 893.53 provides:

**893.53  Action for injury to character or other rights.** An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred.

> Actual damage is harm that has already occurred or is reasonably certain to occur in the future. Actual damage is not the mere possibility of future harm. *Meracle v. Children's Serv. Soc.*, 149 Wis. 2d 19, 26-27, 437 N.W.2d 532 (1989).

*Hennekens*, 160 Wis. 2d at 152-53 (footnotes omitted). Schoendorf notes that *Hennekens* also states that actual damage can occur even without a "contemporaneous monetary loss" when a plaintiff has sustained "injury to a legal interest or loss of a legal right." *Id.* at 153-54. Schoendorf argues that Westridge suffered actual damage in 1975, when it received a defective plan. However, a claim for relief does not accrue until the potential plaintiff knows of or should have through an exercise of reasonable diligence discovered the injury. *See id.* at 160. Schoendorf therefore argues that Westridge learned it had suffered actual damage in 1980, when it was informed that the plan required amendment. Schoendorf also argues that Westridge would have suffered actual damage in the form of the attorney's fees Quarles & Brady would have charged to amend the plan, had the work been performed.

We first note that this argument requires us to accept a convoluted interpretation of Schoendorf's alleged negligence. As noted previously in this opinion, Schoendorf denies any negligence in crafting the plan; yet for purposes of determining the accrual of Westridge's cause of action, Schoendorf asks that we conclude that Westridge suffered actual damage upon its receipt of Schoendorf's negligently-drafted plan. Schoendorf wishes to "have it both ways." We need not take such a complicated position, however, because we conclude, as did the court of appeals under its alternative holding in this case, that any damage was

"inchoate until the plan could no longer be brought into compliance for the assessment years." *Schoendorf*, 195 Wis. 2d at 799 n.9. Thus, Westridge did not suffer actual damage until it was notified by the IRS in March of 1985 that its plan was disqualified; before that time, Westridge knew only that assessments against the plan were a possibility, and, as stated in *Hennekens*, "[a]ctual damage is not the mere possibility of future harm." *Hennekens*, 160 Wis. 2d at 153.[13] Quarles & Brady's complaint, filed in January of 1991, was within the six-year statute of limitations. Thus, we affirm the court of appeals decision affirming the circuit court's denial of Schoendorf's motion for summary judgment.

*By the Court.*—The decision of the court of appeals is affirmed and the cause remanded for further proceedings not inconsistent with this opinion.

---

[13] The court of appeals, *see* 195 Wis. 2d at 799-800 n.9, thus correctly analogized the present situation to that of *Meracle*, 149 Wis. 2d 19. In *Meracle*, this court held that a couple who had learned their adopted child was at risk for Huntington's disease did not suffer actual damage (under the theory that they had been promised a healthy child by the adoption agency) until the child actually developed the disease, and not when they had learned of the risk. *Id.* at 22-30. Likewise, the court of appeals correctly distinguished two cases cited by Schoendorf, *Denzer v. Rouse*, 48 Wis. 2d 528, 180 N.W.2d 521 (1970), and *Boehm v. Wheeler*, 65 Wis. 2d 668, 223 N.W.2d 536 (1974), because these cases are "not only contrary to the line of precedent running through *Hennekens*, but would have the unfortunate result of compelling the premature filing of lawsuits at the first faint scent of potential injury." *Schoendorf*, 195 Wis. 2d at 800 n.9.