Harold BROWN, Plaintiff,

v.

John LaCHANCE, American Bankers Insurance Company, a foreign insurance corporation, and David Smith, Defendants-Third Party Plaintiffs-Appellants-Cross Respondents,

Hirsh FREED, Marvin N. Geller, Donald E. Paulson, Peter D. Gens, Stephen Wolfberg, M. Frederick Pritzker, Andre C. Jasse, Jr., Carl E. Axelrod, Sheldon M. Drucker, Daniel D. Sullivan, James E. McQuire, Elizabeth A. Ritvo, Marc D. Cumsky, David M. Murphree, Howard L. Levin, Stephen A. Hantman, Louis C. Miller, Alan R. Hollander, Paul P. Perocchi, Nancy R. Wilsker, James R. Kane, Jeffrey L. Keffer, Henry Gesmer, Jack H. Calechman, Kenneth A. Korb, Lawrence M. Levy, Philip C. Schneider, Joel M. Reck, Jeffrey M. Freedman, Gerald P. Tishler, Peter B. Farrow, M. Robert Dushman, Joseph F. Ryan, Forrest David Milder, Neal B. Glick, John Achatz, David A. Garbus, Barbara A. Lenk, Marilyn D. Stempler, Howard A. Levine, John A. Wortmann, Jr., Howard G. Zaharoff, Steven R. London, Steven B. Levine, the Firm of Brown, Rudnick, Freed & Gesmer, Third Party Defendants-Respondents-Cross Appellants,†

Gary Leonard GRIFFITHS, a representative of those certain underwriters subscribing to lawyers professional indemnity coverage policy No. 3501 01500, H.S. Weavers (UWR) Agencies, Ltd., Unionamerica Insurance Company, Ltd., G.R.E. Assurance, Ltd.,

†Petition to review denied.

Yasuda Fire & Marine Insurance Company (UK), Ltd., Trident General Insurance Company, Ltd., Terra Nova Insurance Company, Ltd., Assicurazioni Generali, Turegum Insurance Company, Gjensidige Norsk Skadeforsikring, Kansa General Insurance Company, Ltd., Professional & General Insurance Company, Insco, Ltd., Beneficial American Insurance Company, Ltd., and Employers Insurance of Wausau, Third Party Defendants-Respondents.

Court of Appeals

*No. 91-0240. Submitted on briefs July 29, 1991.—Decided September 17, 1991.*

(Also reported in 477 N.W.2d 296.)

53

On behalf of the third party defendants-respondents-cross appellants, Hirsh Freed, et al., the cause was submitted on the briefs of *Richard J. Carlson* and *M. Robert Dushman* of *Patterson, Jensen, Wylie, Silton & Seifert, S.C.,* of Appleton.

On behalf of the third party defendants-respondents, Gary Leonard Griffiths, et al., the cause was submitted on the brief of *John A. Hansen* and *Barbara A. Neider* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

On behalf of the defendants-third party plaintiffs-appellants-cross respondents, John LaChance, et al., the cause was submitted on the briefs of *Thomas G.A. Herz* of *Michael, Best & Friedrich* of Milwaukee, and *Robert McCracken* of *Nash, Spindler, Dean & Grimstad,* co-counsel of Manitowoc.

Before Cane, P.J., LaRocque and Moser, JJ.

Cane, P.J. John LaChance, his insurer, American Bankers Insurance Company, and David Smith (LaChance and Smith) appeal the trial court's summary judgment dismissing their third-party claim against Hirsh Freed, et al., Gary Leonard Griffiths, et al., and the Massachusetts law firm of Brown, Rudnick, Freed & Gesmer (collectively, Rudnick). LaChance and Smith contend the trial court erred by concluding that they failed to set forth a cause of action for contribution or, in the alternative, indemnity against Rudnick. LaChance and Smith further request that we rule on motions in limine for protective orders regarding information and events occurring prior to the involvement of Harold

Brown in the Northernaire transaction. Rudnick cross-appeals the trial court's order denying its motion to dismiss for lack of personal jurisdiction. Rudnick asserts that Wisconsin courts have no personal jurisdiction over it under Wisconsin's long-arm statute and because it did not have sufficient "minimum contacts" with Wisconsin.

We conclude that summary judgment is inappropriate because there is a material issue of fact as to the negligence of Rudnick. Also, because privity is not essential to a cause of action for contribution between joint tortfeasors, LaChance and Smith state a claim upon which relief can be granted. Furthermore, the court has personal jurisdiction under Wisconsin's long-arm statute. Finally, we do not address the motion in limine regarding the protective orders as we do not give advisory opinions. The judgment is therefore affirmed in part, reversed in part and the matter remanded for further proceedings.

Brown, a Massachusetts resident, loaned funds to Fred Schlegel, a Wisconsin resident and owner of Northernaire, Inc., as an investment in that Wisconsin real estate. Brown's loan was to be secured by mortgages on the Northernaire resort and other property located in Vilas County, Wisconsin. Rudnick, a Massachusetts law firm, was Brown's primary counsel throughout the Northernaire transaction.

LaChance and Smith, attorneys licensed to practice in Wisconsin, represented Schlegel and Northernaire, Inc. However, Rudnick, on behalf of Brown, requested LaChance and Smith to perform certain services. These services included making sure certain documents complied with Wisconsin law, recording such documents, filing U.C.C. statements and disbursing funds. Smith denies having any agency or subagency relationship with

Rudnick, while LaChance states he was asked to act for Rudnick.

Brown sued LaChance and Smith, alleging that they were negligent in failing to attain priority with respect to his security interests. Among other things, the complaint alleges that LaChance and Smith misrepresented to Brown that his mortgages were paramount to certain liens when in fact they were not, failed to file certain documents and inserted damaging language in the subordination agreement. LaChance and Smith filed third-party complaints against Rudnick, alleging that if they are found to be negligent toward Brown, they are entitled to contribution from Rudnick who is also negligent. Alternatively, they seek indemnification.

Rudnick filed a motion to dismiss on the basis that the court lacked personal jurisdiction and the third-party complaint failed to state a claim upon which relief could be granted.[1] The motion was denied. The court found that it had personal jurisdiction under sec. 801.05(4)(a), (5)(b)[2] and (5)(e), Stats. It also found that Rudnick had sufficient contacts with Wisconsin through its working relationship with LaChance and Smith. Additionally, the trial court held that the complaint was sufficient because it satisfied notice pleading requirements.

Approximately three years later, Rudnick filed a second motion to dismiss, again alleging that the third-party complaint failed to state a claim. The trial court granted this motion, concluding that because there was

---

[1]The motion to dismiss was also based on a claim that Rudnick lacked capacity to be sued, but this argument was not pursued.

[2]Although page 49 of the transcript of the trial court's decision indicates that the court relied on sec. 801.05(5)(c), it is clear by the court's analysis that it is referring to section (5)(b).

no privity between Rudnick and LaChance and Smith, LaChance and Smith were precluded from suing Rudnick for contribution or, in the alternative, indemnity. In addition, the court held that the pleadings and discovery materials attached to the motions failed to indicate any acts of negligence by Rudnick. Thereafter, LaChance and Smith filed a motion to reconsider in light of our holding in *Grosskopf Oil v. Winter,* 156 Wis. 2d 575, 457 N.W.2d 514 (Ct. App. 1990), dealing with the privity requirement, and the testimony of their expert witness regarding Rudnick's alleged negligence. However, the trial court denied the motion, stating that the *Grosskopf* decision was not controlling.[3]

### FAILURE TO STATE A CLAIM

We first address LaChance and Smith's appeal of the trial court's judgment granting the motion to dismiss for failure to state a claim. Pursuant to sec. 802.06(2), Stats., we treat this motion as a motion for summary judgment.[4] The standard of review of a summary judgment is de novo. *Grosskopf,* 156 Wis. 2d at 581, 457 N.W.2d at 517. This court has set forth the methodology for reviewing a summary judgment many times, and it need not be repeated at great length. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980). Sum-

---

[3]The trial court did not discuss the affidavit, attached to the motion, that contained an expert's opinion alleging negligence by Rudnick.

[4]Section 802.06(2) provides in part:

If on a motion asserting the defense described in f) to dismiss for failure of the pleading to state a claim upon which relief can be granted . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08 . . ..

mary judgment is proper where all issues of material fact are undisputed. The moving party has the burden to establish the absence of a disputed issue as to any material fact. *Id.* at 338, 294 N.W.2d at 477. Where the moving party cannot meet this burden, summary judgment is not appropriate.

LaChance and Smith allege that if they are found to be negligent toward Brown, they are entitled to contribution from Rudnick who is also negligent. Alternatively, they seek indemnification. The trial court granted Rudnick's motion to dismiss, holding that the pleadings and the discovery materials did not allege any negligence by Rudnick and thus failed to state a claim. Additionally, it concluded there was no basis for indemnification.

However, in an affidavit attached to LaChance and Smith's motion to reconsider, they provided the court with an expert's deposition setting forth what he believed were negligent acts and omissions by Rudnick. Although this affidavit was not included in the materials presented on the motion to dismiss, it was included with the motion to reconsider and accepted by the trial court. The expert alleged that Rudnick was negligent, among other things, in failing to request LaChance and Smith to delete the Schedule B standard exceptions contained in the title policy, to determine who had construction liens and obtaining releases from them, to request formal opinion letters and to verify the priority of Brown's security interests. Based on the affidavit, we conclude that there is a disputed issue of material fact concerning whether Rudnick was negligent in its representation of Brown in the Northernaire transaction.

The trial court also relied on the lack of privity between LaChance and Smith and Rudnick as a basis for

granting Rudnick's motion to dismiss.[5] The dismissal was based on the trial court's application of *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 401 N.W.2d 816 (1987). In *Green Spring Farms,* the supreme court followed the general rule in Wisconsin that an attorney cannot be held liable to a third party for acts committed within the scope of an attorney-client relationship, absent fraud or negligence in the drafting of a will. *Id.* at 321–22, 401 N.W.2d at 823. The policy behind this principle is:

> [I]f an attorney must be responsible not only to his or her own client but also to a third-party nonclient, a potential conflict of interest may be inevitable, thus impairing an attorney's ethical obligations to represent his or her own client zealously within the bounds of the law.

*Id.* at 329, 401 N.W.2d at 826. Rudnick also cites *Melrose Floor Co. v. Lechner,* 435 N.W.2d 90 (Minn. Ct. App. 1989), where the Minnesota court held that an attorney's claim for contribution against another attorney in an action by a "mutual" client was not allowed. That court, relying on *Eustis v. David Agency,* 417 N.W.2d 295 (Minn. Ct. App. 1987), articulated another public policy reason for protecting attorneys from nonclient third-party claims, namely, protection of attorney-client confidentiality. *Melrose,* 435 N.W.2d at 91–92. Finally, Rudnick contends that our decision in *Grosskopf* does not apply to this case. We disagree.

---

[5]In the trial court's decision on the first motion to dismiss, the court held that there was an agency or privity relationship between Rudnick and LaChance and Smith. In its decision on the second motion to dismiss, the trial court found a lack of privity. For purposes of analyzing the privity requirement, we assume there was no privity between Rudnick and LaChance and Smith.

In *Grosskopf,* we held that privity is not required between two attorneys where one is seeking recovery from the other on alternative theories of contribution or indemnity in an action against one attorney by a mutual client. *Id.* at 586, 457 N.W.2d at 519. Unlike the fact situation in *Green Spring Farms* where an attorney was sued by a third party for acts committed during the representation of a client, here we are concerned with more than one attorney's alleged negligence to the same client. Thus, the policy protecting an attorney's zealous representation of a client is not defeated by allowing a claim for contribution or indemnity by one attorney against another for alleged negligence in the representation of the same client. Instead, allowing such claims promotes that policy by assuring that any attorney who negligently represents a client may be held liable. To allow a client to sue one attorney where two or more attorneys may be responsible for the client's damages, and not allow contribution among all negligent attorneys, defeats the purpose of contribution among joint tortfeasors—assuring that the responsible parties pay their share of damages.

Furthermore, although the Minnesota cases are not controlling, there is a legitimate concern with protecting attorney-client confidentiality. By suing attorney "A," the client waives his or her right to confidentiality. However, this waiver does not apply to the client's attorney "B" who is joined by "A" for purposes of contribution. This joinder may present evidentiary problems for attorney "A" at trial, but it does not defeat his right to sue for contribution or indemnity. Therefore, we hold that the absence of privity between Rudnick and LaChance and Smith does not defeat their action for contribution or indemnity against Rudnick.

Next, we address LaChance and Smith's claims for indemnity and contribution. The elements of a contribution claim are (1) joint causally negligent wrongdoers, (2) common liability because of such negligence to the same person and (3) one bears more than his or her fair share of the burden. *See Giese v. Montgomery Ward,* 111 Wis. 2d 392, 404, 331 N.W.2d 585, 591 (1983). LaChance and Smith are entitled to contribution from Rudnick if they are all found causally negligent in their representation of Brown, and LaChance and Smith bear more than their share of the common burden to Brown. Here, LaChance and Smith state a claim for contribution, but whether they are entitled to contribution and in what amount is a matter to be determined at trial.

Unlike contribution where liability is shared, indemnity is a principle that "shift[s] the loss from one person who has been compelled to pay to another who on the basis of equitable principles should bear the loss." *Kutner v. Moore,* 159 Wis. 2d 120, 126, 464 N.W.2d 18, 20 (Ct. App. 1990).

> [A] right of indemnity has been said to exist whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join.

*Kjellsen v. Stonecrest, Inc.,* 47 Wis. 2d 8, 11–12, 176 N.W.2d 321, 323 (1970). Here, there is no contractual right of indemnification. Thus, any right to indemnification must be based on equity. The two basic elements of equitable indemnity are the payment of damages and lack of liability.

64

LaChance and Smith argue that they are entitled to indemnification because they were merely carrying out Rudnick's instructions and that the only negligence was Rudnick's failure to request them to provide certain services. Thus, LaChance and Smith allege that they were not negligent and it was Rudnick's negligence that caused Brown's damages. Furthermore, LaChance and Smith settled with Brown. Although we do not know the terms of the settlement, LaChance and Smith paid Brown for his damages. Therefore, LaChance and Smith state a claim against Rudnick for equitable indemnification, as an alternative theory to contribution.

However, whether LaChance and Smith are entitled to indemnity will depend upon the disposition of the case at trial and the terms of their settlement with Brown. Whether and to what extent LaChance and Smith were negligent toward Brown is a question to be determined at trial. If LaChance and Smith are found to be negligent toward Brown or if they conceded negligence in their settlement with Brown, they are precluded from indemnification. Therefore, the trial court's judgment dismissing LaChance and Smith's claim against Rudnick is reversed and remanded for further proceedings.

## PERSONAL JURISDICTION

Next, we review Rudnick's cross-appeal of the trial court's order denying its motion to dismiss for lack of personal jurisdiction. Personal jurisdiction is a question of law that we review de novo. *Capitol Fixture & Woodworking Group v. Woodma Distributors,* 147 Wis. 2d 157, 160, 432 N.W.2d 647, 649 (Ct. App. 1988). The trial court found personal jurisdiction under Wisconsin's

long-arm statute and through Rudnick's sufficient minimum contacts in Wisconsin. We affirm this part of the trial court's decision.

In order to subject Rudnick to personal jurisdiction in Wisconsin, we must conclude that Rudnick's contacts with Wisconsin were sufficient to subject it to jurisdiction under Wisconsin's long-arm statute and that such application of the statute does not violate due process requirements. *Id.* Rudnick acted as Brown's legal counsel in a Wisconsin real estate transaction. Furthermore, Rudnick, on behalf of Brown, utilized Wisconsin attorneys LaChance and Smith to provide legal services pertaining to the transaction. It is uncontested that Rudnick's contacts with Wisconsin consisted of mailing documents to and communicating by mail and phone with LaChance and Smith.

Under sec. 801.05(5)(b), Stats., Wisconsin has jurisdiction over Rudnick where the action arises out of services LaChance and Smith performed within this state for and authorized by Rudnick.[6] The letter from Rudnick to LaChance and Smith, dated May 7, 1980, requests that LaChance and Smith disburse funds, execute and record documents after certain conditions (set forth in the letter) are met, examine and furnish comments regarding enclosed documents and file U.C.C. statements. This letter evidences that LaChance and

---

[6]Section 801.05(5)(b) states in part:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person . . ..

. . ..

**(5) Local services, goods or contracts.** In any action which:

. . ..

(b) Arises out of . . . services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant . . ..

Smith were to perform services in Wisconsin at the request of, and authorized by, Rudnick. Furthermore, it is the alleged negligence with which LaChance and Smith carried out those and other services dealing with the Northernaire transaction that gave rise to Brown's action against them.

Rudnick also argues that there are no facts to prove LaChance and Smith actually performed the services it requested. We disagree. A letter from LaChance to Rudnick, dated May 16, 1980, indicates that LaChance obtained the Schlegels' signatures on the documents and recorded the mortgages pursuant to a telephone conference with Rudnick. Additionally, throughout the trial court proceedings Rudnick never refuted that LaChance and Smith actually performed such services. Thus, Wisconsin has personal jurisdiction over Rudnick under sec. 801.05(5)(b), Stats. Because we hold that sec. 801.05(5)(b) applies, we need not address the applicability of other sections.

Next, we address whether subjecting Rudnick to personal jurisdiction in Wisconsin under sec. 801.05(5)(b), Stats., violates due process. Due process requires that in order to subject a defendant to personal jurisdiction, he must have certain minimum contacts with the state so that maintenance of the action does not offend "traditional notions of fair play and substantial justice." *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 60, 179 N.W.2d 872, 875 (1970) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Compliance with the long-arm statute is presumed to be compliance with due process requirements. *Vermont Yogurt Co. v. Blanke Baer Fruit & Flavor Co.,* 107 Wis. 2d 603, 608, 321 N.W.2d 315, 318 (Ct. App. 1982).

The presumption of due process may be rebutted through use of the "five[-]item due process jurisdictional contact analysis." *Id.* The five items to be analyzed are the quantity of contacts with Wisconsin, the nature and quality of those contacts, the source of the cause of action, the interest of Wisconsin in the action and the convenience in having the action tried in Wisconsin. *Zerbel,* 48 Wis. 2d at 65–66, 179 N.W.2d at 878–79. Rudnick argues that none of the factors favors the exercise of jurisdiction. We disagree.

The exact number of contacts that Rudnick had with Wisconsin is unknown, but the record does indicate that Rudnick's only contacts with Wisconsin were in connection with the Northernaire transaction. Even assuming these contacts were few, they were significant. The contacts consisted of mailing documents to and communicating by mail and phone with LaChance and Smith in Wisconsin. The documents that Rudnick mailed to Wisconsin (loan agreement, mortgage, note, security agreement, subordination agreement and financing statements) were drafted by Rudnick, dealt with the Northernaire transaction and had substantial legal significance. Rudnick's letters and telephone calls were also sent and made in connection with the Northernaire transaction. Additionally, Rudnick's alleged negligence in handling this transaction is the source of the causes of action for contribution or, in the alternative, indemnity.

Rudnick also argues that any negligence on its part occurred in Massachusetts, and thus it is not subject to Wisconsin jurisdiction. However, some of what LaChance and Smith's expert alleges as Rudnick's negligence (failing to determine who had construction liens and obtaining releases from them, failing to verify the

priority of Brown's security interests) are acts or omissions that would have entailed contact with Wisconsin.

Finally, Wisconsin is a convenient forum as the transaction involved Wisconsin real estate, occurred in Wisconsin and Brown (Rudnick's client) subjected himself to Wisconsin jurisdiction by filing an action in Wisconsin. Thus, we find that Rudnick has not rebutted the presumption that Wisconsin's personal jurisdiction over Rudnick under sec. 801.05(5)(b), Stats., comports with due process requirements. Accordingly, we hold that Rudnick had sufficient contacts with Wisconsin to subject it to personal jurisdiction under sec. 801.05(5)(b) and that application of this statute does not violate due process.

## PROTECTIVE ORDERS

LaChance and Smith request us to give an advisory opinion regarding their motions in limine for protective orders pending before the trial court. We do not give advisory opinions. *See City of Racine v. J-T Enterprises,* 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.