Clyde W. HARGER, Plaintiff-Appellant,†

v.

CATERPILLAR, INC., Defendant-Respondent,

PETERBILT MOTORS COMPANY, Defendant.

Court of Appeals

*No. 00–0536. Submitted on briefs October 2, 2000.—Decided October 25, 2000.*

## 2000 WI App 241

(Also reported in 620 N.W.2d 477.)

†Petition to review dismissed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Douglas I. Henderson* of Kenosha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gino Alia* of *O'Connor & Willems, S.C.* of Kenosha, and of counsel, *Brian W. Bell* and *Laura A. Zehner* of *Swanson, Martin & Bell* of Chicago, Illinois.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1.   BROWN, P.J.   The issue here is whether a manufacturer of component parts of a motor vehicle is subject to the Lemon Law. WISCONSIN STAT. § 218.01(1)(L) (1997–98)[1] defines the type of manufacturer who is liable under the Lemon Law. We hold that a manufacturer of component parts who ships the completed part to the automobile manufacturer is not

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

liable under the statute. We affirm the trial court's dismissal of this case.

¶ 2.    Clyde W. Harger purchased a 1992 Peterbilt Model 379 Tractor from Peterbilt of Wisconsin, Inc. Caterpillar, Inc., made the engine contained in Harger's tractor. Peterbilt installed the engine in the tractor. Harger claims that he had a number of problems with the vehicle, including engine problems, which made the tractor a "lemon." Harger sued Caterpillar under the Lemon Law, claiming it was liable because it is a manufacturer under this law.

¶ 3.    The Lemon Law is contained in ch. 218 of the Wisconsin Statutes. To resolve the issue, we must interpret WIS. STAT. § 218.01(1)(L), which defines the term "manufacturer" under the Lemon Law. We interpret statutes de novo. *See Bar Code Resources v. Ameritech Info. Sys., Inc.*, 229 Wis. 2d 287, 291, 599 N.W.2d 872 (Ct. App. 1999). If a statute is unambiguous, we apply the language of the statute without looking to interpretive aids. *See id.* A statute is ambiguous if reasonable minds could disagree as to what the statute means. *See Dussault v. Chrysler Corp.*, 229 Wis. 2d 296, 301, 600 N.W.2d 6 (Ct. App. 1999).

¶ 4.    WISCONSIN STAT. § 218.01(1)(L) describes two classes of manufacturers. For purposes of clarification, we will change the original format of the relevant paragraph to an outline form to visually separate the two different classes. We will also label the classes [1] and [2]—although those labels do not appear in the statute as such—as well as the prerequisites [a] through [d] that are necessary before a manufacturer under class [2] can be considered to be liable under the law:

"Manufacturer" means any person, resident or non-resident who[:]

[Class 1] manufactures or assembles motor vehicles

[Class 2] or who manufactures or installs:

> [a] on previously assembled truck chassis, special bodies or equipment

> [b] which when installed form an integral part of the motor vehicle

> [c] and which constitutes a major manufacturing alteration

> [d] and which completed unit is owned by such manufacturer.

Section 218.01(1)(L) has been renumbered and some changes have been made to the text of the statute, none of which affect our interpretation.

¶ 5.   Both parties agree that Caterpillar does not fall within the first class of manufacturers because Caterpillar does not manufacture or assemble motor vehicles. Harger claims Caterpillar is a manufacturer under the second class. For Harger to show that Caterpillar comes within the second class, all four prerequisites must be present because the language defining the second class is in the conjunctive, not the disjunctive. In other words, Caterpillar must have manufactured or installed special bodies or equipment on a previously assembled truck chassis. The special bodies or equipment when installed must have formed an integral part of the motor vehicle. The special bodies or equipment when installed must have constituted a major manufacturing alteration. And Caterpillar must have owned the completed unit. We will now discuss whether Harger has met this burden.

¶ 6.   Both parties agree that the Caterpillar engine is a "special body or equipment" which was installed on a previously assembled truck chassis. But under the first element, Caterpillar must have manufactured or installed the engine *on a previously assembled truck chassis*. It is undisputed that Peterbilt installed the engine on the truck chassis. Caterpillar only makes and sells engines to Peterbilt. Caterpillar has nothing to do with manufacturing or installing the engine *onto* the truck chassis; so, the first element is not met.

¶ 7.   Harger also fails under the fourth prerequisite. The completed unit (the engine and the chassis together) belongs to Peterbilt, not Caterpillar. Harger claims that the engine, which Caterpillar owned until it sold it to Peterbilt, is the "completed unit." According to Harger, the legislature wanted to make component parts manufacturers liable under the Lemon Law. So, the legislature used the term "completed unit" to describe component parts and expand Lemon Law liability to them.

¶ 8.   But that analysis makes no sense. According to the plain language of the statute, the "completed unit" is the truck chassis plus the special bodies or equipment. The first three elements of the second class of manufacturers state that a manufacturer is one who "manufactures or installs on previously assembled truck chassis, special bodies or equipment which when installed form an integral part of the motor vehicle and which constitutes a major manufacturing alteration." WIS. STAT. § 218.01(1)(L). These elements are describing the manufacturing or installing process in which a truck chassis and special bodies or equipment are combined. The phrase "completed unit" follows the discussion of this process and describes the outcome,

which is the truck chassis and special bodies or equipment combined.

¶ 9.   Furthermore, as stated above, both parties agree that component parts, such as engines, are "special bodies or equipment." Component parts cannot be both the "special bodies or equipment" and the "completed unit" because the "special bodies or equipment" and the chassis, once put together, make the "completed unit." Moreover, if the legislature intended that a technical phrase such as "special bodies or equipment" meant the same thing as the "completed unit," used only twenty words later in the same paragraph, it would have only used one term. In other words, "completed unit" must mean something other than the equivalent of "special bodies or equipment." Reading the elements of the statute together, the "completed unit" is the result of the manufacturing or assembly process described in the statute—the chassis plus the special bodies or equipment. It is undisputed that Peterbilt, rather than Caterpillar, owned the completed unit. Caterpillar fails to meet the final element of the second class of manufacturers.

¶ 10.   As noted by Caterpillar, putting the conclusive language of WIS. STAT. § 218.01(1)(L) aside, the practical and financial difficulties of requiring manufacturers of component parts to provide Lemon Law remedies demonstrate that the legislature did not intend that component parts manufacturers be liable under the Lemon Law. Damages under the Lemon Law include replacing the vehicle or refunding the purchase price of the vehicle less reasonable use. *See* WIS. STAT. § 218.015(2)(b)2.a, b. Manufacturers of component parts would have difficulty replacing the vehicle as they are not in the business of selling vehicles and have no inventory of vehicles on hand.

¶ 11.    Further, it makes no sense to saddle manufacturers of component parts with the financial risk of having to reimburse the vehicle owner for the purchase price of the vehicle less reasonable use. Component parts manufacturers do not receive payment from the purchasers for the entire purchase price of the vehicle. For example, in this case, the engine cost less than twenty percent of the entire purchase price of the tractor and Peterbilt only compensated Caterpillar for that amount. Under Harger's theory of this case, Caterpillar could be liable for nearly the entire purchase price of the vehicle even though it was never paid anywhere near this amount. Contrary to Harger's assertion, the legislature could not have intended this result.

*By the Court.*—Order affirmed.