Ken & Sandra BEGALKE d/b/a Ken's Septic Cleaning, Plaintiff,

v.

STERLING TRUCK CORPORATION, and Freightliner, LLC, Defendants and Third–Party Plaintiffs,

v.

Caterpillar, Inc., Third–Party Defendant.

No. 06–C–0186–C.

United States District Court, W.D. Wisconsin.

March 22, 2007.

Thomas E. Lister, Thomas E. Lister, S.C., Black River Fall, WI, William S. Pocan, Jastroch & LaBarge, S.C., Waukesha, WI, for plaintiffs.

Brian W. McGrath, Foley & Lardner, Milwaukee, WI, Elizabeth Erickson Pevehouse, Foley & Lardner LLP, Madison, WI, for defendants.

## OPINION and ORDER

CRABB, Chief Judge.

In this civil action for monetary relief, plaintiffs Ken Begalke and Sandra Begalke bring claims under the Wisconsin Lemon Law, Wis. Stat. § 218.0171, against defendants Sterling Truck Corp. and Freightliner, LLC. who, in turn, have brought suit against third party defendant Caterpillar, Inc. Jurisdiction is present under 28 U.S.C. § 1332.

Now before the court are (1) plaintiffs' motion for summary judgment; (2) defendants Sterling Truck Corp.'s and Freightliner, LLC's motion for partial summary judgment; and (3) third party defendant Caterpillar's motion for summary judgment. Because the parties dispute the facts relevant to determining whether plaintiffs' use of their truck was substantially impaired, plaintiffs' motion will be denied. The partial motion for summary judgment of defendants Sterling and Freightliner will be denied. Should the jury find that the alleged nonconformity in plaintiff's vehicle was attributable in whole or in part to the vehicle's Caterpillar engine, defendants would remain liable under Wisconsin's lemon law. Third party defendant's motion will be granted in part and denied in part. Because questions of material fact remain with respect to whether the Caterpillar engine was a cause of the alleged nonconformity, third party defendant's motion will be denied with respect to plaintiff's lemon law claim. However, third party defendant may not be held liable for damages defendants may be required to pay under the lemon law (with the sole exception of the cost of engine replacement) and its motion for summary judgment with respect to damages will be granted.

Also before the court is third party defendant's motion to strike the second declaration of Michael Minsloff and declarations of Robert Wiskerchen and Richard Saward. In its motion, third party defendant contends that 28 U.S.C. § 1746 requires that all declarations be "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: ... 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.'" Because the affidavits of Minloff, Wiskerchen and Saward ended with the words, "sworn under penalty of perjury pursuant to 28 U.S.C. § 1742[sic]," defendants contend that they should be stricken. Al-

though I find that the subscription used by Minloff, Wiskerchen and Saward complies substantially with the requirements of § 1746, the motion is now moot because defendants have submitted new versions of Minloff's, Wiskerchen's and Saward's affidavits containing the statutory language. Therefore, third party defendant's motion to strike will be denied.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiffs Ken Begalke and Sandra Begalke are the owners and operators of Ken's Septic, a business that specializes in pumping septic and holding tanks and disposing of their contents. Plaintiffs are citizens of Wisconsin.

Defendant Freightliner, LLC, is the sole owner of its subsidiary defendant Sterling Truck Corporation. Defendant Sterling is a Delaware corporation with its principal place of business in Michigan. Defendant Freightliner is a Delaware limited liability company with its principal place of business in Portland, Oregon. Defendant Freightliner is a subsidiary of Daimler-Chrysler North America Holding Corporation, which is incorporated in Delaware, with its principal place of business in Auburn Hills, Michigan.

Third-party defendant Caterpillar is a Delaware corporation with its principal place of business in Peoria, Illinois. Defendant Caterpillar is not an authorized agent of Freightliner.

### B. *Plaintiffs' Sterling Truck*

On July 14, 2004, plaintiffs signed a purchase contract and made a down payment on a Model LT9513 Sterling truck with a Caterpillar engine. On October 25, 2004, plaintiffs took possession of their new truck and paid the balance of the $74,942 purchase price.

### 1. *Warranties*

When plaintiffs purchased the truck, they were provided with an owner's warranty from Freightliner that covered the truck's chassis. (The chassis was the part of the truck Freightliner and Sterling had manufactured and assembled.) The Freightliner warranty was valid from October 25, 2004, through October 24, 2005, and covered

> all factory-installed components of the vehicle/chassis that [we]re not excluded elsewhere in the warranty or by special agreement or described as having a different time, distance or hours.

Under a bolded heading reading "Limitations," the Freightliner warranty stated:

> This Warranty does not apply to engines, Allison transmissions, tires, or other components or parts that are not manufactured by [Freightliner] and that are warranted directly by their respective manufacturers. **This warranty is exclusive and in lieu of all other warranties of any kind whether written, oral or implied.**

A separate portion of the warranty titled "Exclusions" contained the following paragraph:

> **Engine**
>
> The engine, including all of its components as supplied by the manufacturer, are [sic] not covered under this Warranty, but is warranted separately by the manufacturer of the engine. For engine warranty or service, contact the engine manufacturer's authorized sales and service facility.

The engine of plaintiffs' truck was covered by a limited warranty from Caterpillar. Under the terms of that warranty,

Caterpillar Inc. or any of its subsidiaries ... warrants new 10.3 liter up to and including 18.1 liter engines sold by it for use in powering on-highway vehicles to be free from defects in material and workmanship.

The warranty purported to limited plaintiffs' remedies to "the provisions of materials and services." Caterpillar disclaimed any responsibility for incidental or consequential damages.

### 2. *Performance problems*

On November 8, 2004, after installing a vacuum tank on their truck, plaintiffs began using the truck in their septic cleaning business. Later that day, they noticed problems with the truck. Their "truck performance diary" reflects that the truck "acted as if it was not getting fuel."

Over the next few months, plaintiffs continued to experience problems with the vehicle, which they recorded in the performance diary:

| Date | Problem | Days Out of Service |
|---|---|---|
| 12/2/04 | Light in heated mirror switch broken, engine brake parameters incorrect, engine light goes on and off, steering wanders, truck does not turn sharply enough to the right, air suspension dump valves mis-installed, pressure protection valve failed, low coolant, breather vents on axels letting oil vapor pass. | 1 |
| 12/15/04 | Winterfront and door panel snaps missing. | 1 |
| 1/6/05 | Air leak behind dashboard, dipstick tube angled awkwardly. | 1 |
| 2/9/05 | Freeplay in clutch and clutch brake. | 1 |
| 3/9/05 | Axel U bolts loose. | 1 |
| 4/8/05 | Occasionally air dryer exhaust stays on too long. | 4 |
| 7/20/05 | Front bumper rusted, horn/cruise control malfunction; Air dryer won't "spit" properly; freeplay in clutch. | 1 |

On December 2, 2004, when the truck's odometer read 2,727 miles, plaintiffs took their truck to V&H, Inc., an authorized Sterling dealer, for repairs. Plaintiffs complained that the engine "idled rough" and the truck vibrated. Additionally, plaintiffs complained that the truck's turning radius was too large. V&H resolved all the problems except the vibration problem.

After this initial repair, plaintiffs took their truck to V&H complaining of engine-related problems on January 6, February 9, March 9, March 14, March 22, March 30, April 8, and June 1, 2005. Plaintiffs complained about the engine "spitting," "cutting out," and "sputter[ing]." During its repair attempts, V&H tested the truck empty and with a full load of septic waste. In the course of its repairs, V&H replaced the truck's fuel water separator and the throttle position sensor. Despite these repairs, plaintiffs' truck still failed to run properly.

In addition to the engine stumbling problems, plaintiffs complained of several other problems with their truck. Plaintiffs asked V & H to readjust the right steering stop, reorient the engine oil dipstick, fix an air leak, repair a leaking turbo oil seal, replace a rusted bumper, fix an air dryer pop-off valve, and repair the horn and cruise control. V&H completed each of these repairs.

In late February 2005, plaintiffs attended a week-long trade show in Nashville, Tennessee. Because plaintiffs believed that the engine stumbling problems presented a safety concern, they prohibited their employees from using the truck in their absence.

In April 2005, V&H referred plaintiffs to Fabco, an authorized Caterpillar dealer and service agent located in Eau Claire, Wisconsin. A Fabco service representative rode with plaintiff Ken Begalke while he made service calls. Following this ride, the representative recommended replacing the fuel injectors on the truck. Although the fuel injectors were replaced, the engine stumbling problem continued. On May 2 or 3, 2005, Fabco installed a new electronic computer module. On May 11, 2005, Fabco installed a new wiring harness

and flashed new software into a computer associated with the engine. These repairs also failed to fix the problem.

On May 13, 2005, plaintiff Sandra Begalke called the Sterling Complaint Center to register her grievances regarding the truck's performance. Shortly thereafter, plaintiffs determined that the truck was too unsafe to allow their employees to drive and decided that only Ken Begalke would continue driving the vehicle. Accordingly, they cancelled a scheduled vacation so that plaintiff Ken Begalke could take the truck on service calls.

On June 1, 2005, plaintiffs took their truck, with a full load of septic waste, to V&H where Caterpillar service representatives drove the vehicle. Plaintiffs met with representatives from Sterling, V&H, and Caterpillar. At that time, plaintiffs requested that either the truck or the engine be replaced.

On July 21 and 25, 2005, plaintiffs reported to V&H that a warning light on their truck was flashing "Code 55" and that the truck was jerking. Representatives from Caterpillar suggested that the problem might be resolved by developing new software for the engine's computer. Plaintiffs maintained contact with Caterpillar through mid-August. On August 24, 2005, Caterpillar informed plaintiffs that it would not provide software to solve their problem.

That same day, plaintiffs spoke with representatives of Sterling and V&H, and learned that the engine on their truck would be replaced by Caterpillar at no cost. On August 29, 2005, Fabco informed plaintiffs that they had located a replacement engine. Between September 7 and 10, 2005, Fabco installed the new engine. A few days later, plaintiffs informed Fabco that the truck still suffered from the engine stumbling issues.

On September 16, 2005, plaintiffs sent a letter to Sterling and Caterpillar notifying them that they believed the defects in their vehicle substantially impaired its value and safety. On September 28, 2005, representatives of Fabco, Sterling and Caterpillar drove plaintiffs' truck with a data logging device used to record information. The Sterling representative acknowledged that the truck experienced engine hesitations during this testing.

On September 30, 2005, a Sterling representative told plaintiffs that Boyer, the dealer from whom plaintiffs purchased the truck, was not interested in replacing or repurchasing the truck. Ten days later, the same Sterling representative notified plaintiffs that Caterpillar still believed it could fix the engine stumble issue. On October 12, 2005, a Caterpillar representative visited plaintiffs' shop and acquired engine data. Five days later, Caterpillar arranged to take the truck to Bloomington, Minnesota for testing. On October 25, 2005, Fabco installed an in-line electrical pump.

On October 31, 2005, having failed to resolve the engine stumbling issues, plaintiffs asked Caterpillar to "step back" as they intended to seek a new vehicle from Sterling. A Caterpillar representative contacted the plaintiffs on November 10 and 11, 2005, asking for their patience because Sterling was trying to develop a plan with V&H to resolve their grievances.

On several occasions (plaintiffs do not say when), Ken Begalke narrowly avoided accidents while trying to pass other vehicles on two lane country roads. On each occasion, when Ken Begalke pulled into the left lane to pass and depressed the accelerator, the truck failed to accelerate and lost power. He then had to rush back into his lane. On at least one occasion, the vehicles traveling behind him closed the space behind the vehicle he was attempting to pass.

On November 27, 2005, while plaintiffs were driving on an icy road with their truck unloaded, the engine stumbled as Ken Begalke attempted to accelerate. Plaintiffs described the problem as "[the truck's] hiccup or its hesitat[ion] or lack of fuel...." The truck stumbled, and began to skid, which Ken Begalke believed was caused by the motor's jerking. He tried to feed more fuel to the truck to maintain control, but the truck did not respond. Faced with losing control of the truck as a curve neared, or with heading down a gravel road toward the river, plaintiffs chose the latter (plaintiffs note that "hitting the breaks on ice on a straight-on pavement ... [is] a sure way to flip a truck...."). Plaintiffs regained sufficient control on the gravel road to apply the breaks and stop before hitting the river. Believing that the engine stumble issue precipitated this event, plaintiffs decided to stop using the truck.

The next day, plaintiffs attempted to negotiate a resolution with either V&H or Sterling. Plaintiffs provided a letter outlining their damages. On December 15, 2005, without having heard back from Sterling, plaintiffs purchased a new truck from International to replace the 2005 Sterling. At this time, the plaintiffs decided not to renew the license for the 2005 Sterling and arranged to have the vacuum tank removed. The 2005 Sterling was removed from service on January 1, 2006; the new International was not ready for service until February 27, 2006.

On January 11, 2006, plaintiffs signed a formal statutory notice and demand as required by the Wisconsin Lemon Law. Plaintiffs sent the notice and demand by certified mail to both Sterling and Freightliner, who acknowledged receiving it. Neither Sterling nor Freightliner accepted return of plaintiffs' truck or provided a refund within 30 days of receiving notice.

At present, plaintiffs' Sterling truck is in storage in their shop in Holcombe, Wisconsin. Plaintiffs still owe principal on this truck, and are still accruing interest on their loan. Plaintiffs still insure the vehicle.

Robert Wiskerchen, the general truck sales manager of V&H, testified in his deposition that the value of plaintiffs' truck is less than it would have been were it not suffering from the engine stumbling issues. The only offer V&H made for plaintiff's truck was for $25,000 (its value as scrap), but this did not reflect the price V&H believed it could obtain from a customer.

V&H service manager Randy Adamski has testified that when he tested the truck it demonstrated only a "brief hesitation" or a "minor miss." In Adamski's estimation, the problem revealed during testing was more an annoyance than a safety hazard and did not make the truck unusable. Tom Wuellner, Fabco's Truck Engine Technical Coordinator, tested the truck on three occasions. He has characterized the "surge" problem as a "mere annoyance and nothing more."

Between November 2005 and February 2007, Fabco received reports that approximately one dozen trucks in Wisconsin and the Upper Peninsula of Michigan had experienced engine problems similar to those experienced by plaintiffs. The other trucks were made by a variety of manufacturers, including Freightliner, Sterling, Kenworth, Peterbilt and International; each had a Caterpillar C13 engine. On some of these trucks, Caterpillar has installed software that masks the problems caused by the engine's reaction to the truck's driveline which is part of the chassis. (The parties dispute whether the problems are the result of a defect in the engine or the driveline, which is a part of the chassis.)

## OPINION

### A. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs have moved for summary judgment on their lemon law claim, seeking damages as permitted by the statute. In assessing whether summary judgment is appropriate, I must determine whether the undisputed facts reveal that plaintiffs are entitled to judgment in their favor as a matter of law. To succeed on a lemon law claim, plaintiffs must show that (1) they purchased a new motor vehicle; (2) the motor vehicle suffered from a nonconformity subject to an applicable express warranty; (3) they reported the nonconformity to the manufacturer or one of the manufacturer's authorized dealers; (4) they presented the motor vehicle for repair prior to the expiration of the warranty or one year, whichever came sooner; (5) a reasonable attempt at repair was made; (6) they then offered title to the nonconforming motor vehicle to the manufacturer; and (7) the manufacturer failed to provide either a new comparable motor vehicle or a refund within 30 days of their offer. Wis. Stat. § 218.0171. The parties appear to agree that plaintiffs have established elements 1, 3, 4, 5, 6 and 7. Their dispute centers on the second element, whether the vehicle suffered from a nonconformity and whether this nonconformity was subject to defendant Freightliner's limited warranty.

Defendants contend that plaintiffs have failed to adduce evidence showing that the defect in their truck constitutes a "nonconformity." The Wisconsin Lemon Law defines nonconformity as:

> a condition or defect which substantially impairs the use, value or safety of a motor vehicle, and is covered by an express warranty applicable to the motor vehicle or to a component of the motor vehicle, but does not include a condition or defect which is the result of abuse,

neglect or unauthorized modification or alteration of the motor vehicle by a consumer. Wis. Stat. § 218.0171(1)(h).

In this case, none of the parties contend that plaintiffs abused, neglected, or modified their truck without authorization. Thus, the only question is whether the plaintiffs' truck suffered from a defect, covered by an express warranty, that "substantially impair[ed][its] use, value, or safety." *Id.*

■ "Whether the [plaintiffs'] vehicle was subject to a nonconformity which substantially impaired its use, value or safety require[s] factual findings which are intertwined with a legal conclusion: whether the facts fulfill the legal standard of substantial impairment." *Chmill v. Friendly Ford–Mercury of Janesville, Inc.*, 144 Wis.2d 796, 803, 424 N.W.2d 747 (Wis.Ct. App.1988). Plaintiffs contend that the engine stumble problem impaired the use, value and safety of their truck. However, defendants and third party defendants (supported by the testimony of their authorized service dealers) contend that the engine stumble problem was "only an annoyance," "a minor miss," or merely a "surge." It is up to the jury to decide whose versions of the facts to accept as true. Because material facts remain in dispute with respect to the question of nonconformity, plaintiffs are not entitled to summary judgment on their lemon law claim.

### B. *Defendants' and Third Party Defendant's Motions for Summary Judgment*

The motion for partial summary judgment of defendants Freightliner and Sterling Truck Corp. begins where plaintiffs' motion ended. Acknowledging that disputes of material fact preclude summary judgment in their favor on plaintiffs' lemon law claim, defendants have asked the court

to answer two questions: (1) whether they may be held liable under the lemon law for nonconformities in the engine (rather than the chassis) of plaintiffs' truck and (2) if so, whether they may seek indemnification or contribution from third party defendant Caterpillar for any defects attributable to the truck's engine.

Third party defendants are quick to point out that defendants are requesting advice, not moving for judgment as a matter of law pursuant to Fed.R.Civ.P. 56. That is not entirely true. If defendants are not liable for problems with the vehicle's engine, then they would be entitled to judgment as a matter of law so long as any nonconformity is in the engine and not the chassis of plaintiffs' truck. Moreover, third party defendant has itself moved for summary judgment on the question of damages. Resolving these legal questions before trial will assist the parties in their trial preparation, preventing the attempted introduction of needless or irrelevant evidence. Therefore, I turn to the questions raised by defendants' pending motion.

### 1. *Liability for disclaimed warranty*

Defendants appear to concede (as they almost certainly must) that under Wisconsin's lemon law they are responsible for replacing plaintiffs' vehicle if its nonconformities are caused by problems with the truck's chassis. However, defendants contend that they cannot be held responsible for problems with the truck's engine because they explicitly disclaimed any warranty on the engine. According to defendants, in order to obtain relief for any engine problems, plaintiffs were required to sue third party defendant Caterpillar directly, not defendants.

 Disputes of material fact prevent the court from determining whether the vehicle problems plaintiffs experienced were caused by the truck's engine, chassis

or some combination of the two. However, the dispute is ultimately of no consequence insofar as defendants' liability is concerned. Even if the alleged nonconformity is limited to the Caterpillar engine, defendants would remain liable under the lemon law.

In *Schonscheck v. Paccar, Inc.*, 2003 WI App 79, 261 Wis.2d 769, 661 N.W.2d 476 (2003), the Wisconsin Court of Appeals addressed the very question presented here: whether a manufacturer's liability under the lemon law could be limited to problems with the warranted component parts. Like plaintiffs, Schonscheck had a truck that suffered from a vibration defect. *Id.*, 2003 WI App 79 at ¶ 3. Neither the chassis manufacturer, Kenworth, nor the engine producer, Cummins Engine, was able to determine the cause of the problem. *Id.* When Schonscheck sued Kenworth under the Lemon Law, Kenworth argued that it could not be held liable because the defect lay in the vehicle's engine, on which Kenworth had disclaimed all warranties. *Id.*, 2003 WI App 79 at ¶ 13.

After examining the purpose of the lemon law, the Wisconsin court of appeals held that manufacturers cannot avoid liability by excluding all major component parts from their express warranties. *Id.*, 2003 WI App 79 at ¶ 17. The court explained:

[T]he statute prohibits waiver of consumers' rights and protections. Wis. Stat. § 218.0171(6). As our supreme court has stated, the lemon law was enacted to provide consumers with remedies beyond the "inadequate, uncertain and expensive remedies of the Uniform Commercial Code or the Magnuson–Moss Warranty Act." *Hughes v. Chrysler Motors Corp.*, 197 Wis.2d 973, 980–81, 542 N.W.2d 148 (1996). When a manufacturer excludes components from its warranty, it is effectively compelling

the consumer to waive the consumer's rights under the lemon law for nonconformities to these parts. A manufacturer cannot simply exclude all major parts from its warranty to avoid lemon law liability. To do so would put consumers back in the area of "inadequate, uncertain and expensive remedies." *Id.* *Schonscheck,* 2003 WI App 79, ¶ 17, 261 Wis.2d 769, 661 N.W.2d 476; *see also Harger v. Caterpillar, Inc.,* 2000 WI App 241, ¶ 9, 239 Wis.2d 551, 620 N.W.2d 477 (2000) (holding that the producers of component parts are not subject to lemon law liability).

Defendants contend that this court is bound to follow Seventh Circuit precedent as articulated in *Bushendorf v. Freightliner Corp.,* 13 F.3d 1024 (7th Cir.1993), a diversity case arising under Wisconsin's Lemon Law. In *Bushendorf,* the Court of Appeals for the Seventh Circuit was asked to consider whether Bushendorf ordered a semi-tractor truck from Freightliner, specifying that the truck come equipped with a 425–horsepower engine. Freightliner warranted the vehicle, while the engine manufacturer, Detroit Diesel, warranted the engine. After delivery, Bushendorf complained that his truck did not have enough power. Although tests confirmed that the engine was operating at full force, the power was not being fully conveyed through the vehicle's driveline. No part of the truck could be identified as defective; however, plaintiff asserted that the vehicle salesman had promised him that the 425–horsepower engine would convey its full power to the vehicle. Plaintiff characterized the assurance as an oral warranty and sued under Wisconsin's lemon law.

Judge Posner issued the court's decision, holding that the oral statement of the salesman could not bind Freightliner because the salesman was not an authorized agent of Freightliner. *Id.* at 1026. As an independent ground for ruling against Bushendorf, the court discussed the fact that Freightliner's express warranty disclaimed reliance on oral warranties. *Id.* at 1027. Citing a case arising under Arizona's lemon law, the court noted that "[t]he lemon law contains no provision forbidding disclaimers of warranties or allowing a suit to be brought upon a disclaimed warranty." *Id.* Because Wisconsin courts had not considered the question of disclaimed warranties, the court of appeals did not rely on Wisconsin law.

■ There are several reasons why *Bushendorf* does not govern this case. First, the question in *Bushendorf* was not whether the manufacturer could disclaim a warranty on a vehicle's key component parts. Moreover, *Bushendorf* was decided a decade before the Wisconsin court of appeals issued its decision in *Schonscheck.* A federal court sitting in diversity must apply the law as enunciated by the highest court of the state from which the case arose. *Kutsugeras v. AVCO Corp.,* 973 F.2d 1341, 1346 (7th Cir.1992). When that state's highest court has not addressed the issue, the law from that state's intermediate appellate court applies. *Kutsugeras,* 973 F.2d at 1346. Although defendants raise arguable challenges to the *Schonscheck* decision, it remains the most recent and analogous statement of Wisconsin law. Federal courts are not free to rewrite state law or overrule the decisions of state courts. For good or ill, it is the 2003 *Schonscheck* decision that controls this case; not the Seventh Circuit's 1993 decision in *Bushendorf.*

One thing more. Defendants assert that *Schonscheck* "contradicts" another Wisconsin court of appeals decision, *Malone v. Nissan Motor Corp.,* 190 Wis.2d 436, 526 N.W.2d 841 (Ct.App.1994). The comparison is inapposite. In *Malone,* the court of appeals was asked to decide whether a

vehicle manufacturer could be held liable under the lemon law for a dealer-added accessory covered by a separate warranty. As in *Bushendorf,* the court of appeals was not asked to consider whether a manufacturer may disclaim its warranty on essential components of the vehicle it has manufactured.

Under *Schonscheck,* defendants may be held liable for any nonconformity plaintiffs experienced with their truck's engine or chassis. Therefore, defendants' motion for summary judgment will be denied with respect to their contention that they are not liable for any engine defects under Wisconsin's lemon law.

### 2. *Indemnification and contribution*

■ Defendants contend that if the jury returns a verdict indicating that the problem with the truck lies in whole or in part with the Caterpillar engine, they are entitled to seek indemnification or contribution from third party defendant. Third party defendant appears to concede that defendants could seek reimbursement for the value of the truck's engine, but asserts that defendants may not shift to them any additional costs imposed by the lemon law. Wis. Stat. § 218.0171(7) ("The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate."). Because I agree that the lemon law and the expenses it authorizes apply only to motor vehicle manufacturers and not to the manufacturers of vehicle components, defendants' motion for summary judgment will be denied with respect to their claim for contribution and for indemnification beyond the value of the vehicle's engine. Third party defendant's cross motion for summary judgment will be granted with respect to the same question.

Defendants have made two alternative claims against third party defendant. They contend that they are entitled to partial contribution from third party defendant if the jury finds that the engine was one of several sources of the truck's alleged nonconformity. If, however, the jury finds that the truck's problems were wholly a result of a defective engine, defendants contend that they are entitled to full indemnification.

■ To prevail on a claim for contribution under Wisconsin law, it must be clear that (1) the party seeking contribution and the party from whom contribution is sought are jointly causally negligent; (2) the parties share common liability because of their negligence to the same person; and (3) one party bears more than his fair share of the burden. *Brown v. LaChance,* 165 Wis.2d 52, 64, 477 N.W.2d 296 (Ct. App.1991). Defendants' alleged liability to plaintiffs arises from two distinct acts: their alleged failure to provide plaintiffs with a conforming truck and their failure to provide plaintiffs with a refund or new truck after plaintiffs invoked their rights under the lemon law. Third party defendants share no part in defendants' liability with respect to either of these acts.

■ Insofar as third party defendant provided defendants with an allegedly defective engine, they may be liable to *defendants* for their failure to provide a merchantable engine. However, third party defendant is not liable for defendants' failure to provide *plaintiffs* with a conforming truck. Under Wisconsin law, "a manufacturer of component parts who ships the completed part to the automobile manufacturer is not liable" under the lemon law for any defects in the product it manufactures. *Harger v. Caterpillar, Inc.,* 2000 WI App 241, ¶ 1, 239 Wis.2d 551, 620 N.W.2d 477 (2000). Without shared liability, defendants may not maintain their claim for

contribution against third party defendants. Therefore, defendants' motion for summary judgment will be denied and third party defendant's motion granted with respect to defendants' claim for contribution against third party defendant.

 Unlike contribution, where liability is shared, indemnity is a principle that "shift[s] the loss from one person who has been compelled to pay to another who on the basis of equitable principles should bear the loss." *Brown*, 165 Wis.2d at 64, 477 N.W.2d 296 (citing *Kutner v. Moore*, 159 Wis.2d 120, 126, 464 N.W.2d 18, 20 (Ct.App.1990)). A right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join. *Id.; Kjellsen v. Stonecrest, Inc.*, 47 Wis.2d 8, 11–12, 176 N.W.2d 321, 323 (1970). To prove entitlement to indemnification, a plaintiff must show that it was compelled to pay damages for which it had no liability. *Foss v. Madison Twentieth Century Theaters, Inc.*, 203 Wis.2d 210, 222, 551 N.W.2d 862, 867 (Ct.App.1996); *Brown*, 165 Wis.2d at 64, 477 N.W.2d 296.

In support of their claims for indemnification and in opposition to third party defendant's motion for summary judgment, defendants cite several foreign cases in which courts have upheld judgments against component manufacturers under other states' lemon laws. *Temple v. Fleetwood Enterprises, Inc.*, 133 Fed.Appx. 254 (6th Cir.2005) (unpublished opinion) (mentioning in dicta that manufacturers have "recourse against component part manufacturers for providing defective products"); *Young v. Dart*, 428 Pa.Super. 43, 630 A.2d 22, 23–24 (1993) (applying Pennsylvania's lemon law); *Dillow v. Mallard Coach Co.*, 83 Ohio App.3d 801, 615 N.E.2d 1076, 1079–80 (1992) (applying Ohio's lemon law). Not only are these cases distinguishable on their facts, they fail to account for Wisconsin case law, which has been unequivocal in its rejection of lemon law liability for component manufacturers. Although defendants may have "avenues of recourse" open to them (such as a claim for breach of contract), they cannot obtain lemon law damages from third party defendants, whether directly or indirectly.

Third party defendant does not deny that if the jury finds that its engine was the sole or partial source of the nonconformity in the truck's engine, defendants could require it to pay the cost of replacing its allegedly defective product. Such a position makes sense given the fact that third party defendant issued plaintiff a warranty guaranteeing the performance of the engine throughout the life of the warranty. Although defendants are not in a position to enforce the warranty themselves, but for the lemon law, third party defendant would be required to replace plaintiffs' allegedly defective engine. Under such circumstances, it would be wholly equitable to require third party defendant to reimburse defendants for the cost of engine replacement.

However, to the extent that defendants seek to transfer to third party defendant the liability imposed upon defendants by the lemon law, their claim fails. As the Wisconsin court of appeals explained in *Harger*:

> [T]he practical and financial difficulties of requiring manufacturers of component parts to provide Lemon Law remedies demonstrate that the legislature did not intend that component parts manufacturers be liable under the Lemon Law. Damages under the Lemon Law include replacing the vehicle or refunding the purchase price of the vehicle less reasonable use.... Manufacturers of component parts would have difficulty

replacing the vehicle as they are not in the business of selling vehicles and have no inventory of vehicles on hand.

Further, it makes no sense to saddle manufacturers of component parts with the financial risk of having to reimburse the vehicle owner for the purchase price of the vehicle less reasonable use. Component parts manufacturers do not receive payment from the purchasers for the entire purchase price of the vehicle. For example, in this case, the engine cost less than twenty percent of the entire purchase price of the tractor and Peterbilt only compensated Caterpillar for that amount. Under [plaintiff's] theory of this case, Caterpillar could be liable for nearly the entire purchase price of the vehicle even though it was never paid anywhere near this amount.... [T]he legislature could not have intended this result.

2000 WI App 241, ¶ 10–11, 239 Wis.2d 551, 620 N.W.2d 477. The court's reasoning applies with even greater force in this case, where plaintiffs are seeking not only the value of their vehicle but also double the amount of their consequential damages, costs and attorneys fees as a result of defendants' failure to respond to plaintiffs' original request for relief under the lemon law. Third party defendants cannot bear responsibility for defendants' failure to respond to their statutory obligations. To do so would be inconsistent with the lemon law and the rules of fair play.

### ORDER

IT IS ORDERED that

1. Plaintiffs Ken Begalke's and Sandra Begalke's motion for summary judgment is DENIED;

2. Defendants Freightliner LLC's and Sterling Truck Corp.'s motion for partial summary judgment is DENIED.

3. Third party defendant Caterpillar's "Motion to Strike the Second Declaration of Minsloff and Declarations of Wiskerchen and Saward" is DENIED as moot.

4. Third party defendant Caterpillar's motion for summary judgment is

a) DENIED with respect to plaintiffs' lemon law claim and

b) GRANTED with respect to defendants' claim for indemnification or contribution for damages that may be assessed against them under the lemon law that exceed the value of the Caterpillar engine.